## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

**LARRY ARNOLD YOUNG,**

      **Plaintiff,**

**v.**                                          **Case No. 1:17-cv-03633**

**T.A. LACY; PERRY RICHMOND;**
**and AARON YOUNG,**

      **Defendants.**


### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Plaintiff's *pro se* amended complaint under 42 U.S.C. § 1983, (ECF No. 33), and a motion and amended motion for summary judgment filed by Defendants T.A. Lacy ("Lacy"), Perry Richmond ("Richmond"), and Aaron Young ("Young"), (ECF Nos. 48, 53).[1] Plaintiff has responded to Defendants' request for summary judgment, and Defendants have filed a reply. (ECF Nos. 55, 56). Accordingly, the issues have been fully developed and are ready for resolution.

This matter is assigned to the Honorable David A. Faber, United States District Judge, and is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **PROPOSES** that the presiding District Judge accept and adopt the findings herein and

---

[1] Defendants filed the amended motion for summary judgment to include redacted portions of certain exhibits that were attached to the motion for summary judgment. *See* (ECF No. 51).

**RECOMMENDS** that Defendants' motion and amended motion for summary judgment, (ECF Nos. 48, 53), be **GRANTED,** in part, and **DENIED**, in part. With respect to Plaintiff's excessive force claims against Lacy under the Fourth Amendment to the United States Constitution ("Fourth Amendment") and against Richmond and Young under the Fourteenth Amendment to the United States Constitution ("Fourteenth Amendment"), the undersigned **FINDS** that there are no material facts in dispute and Defendants are entitled to judgment as a matter of law. Therefore, summary judgment in favor of Defendants should be granted on all three excessive force claims. Moreover, given that Plaintiff does not assert any other claims against Richmond and Young, these defendants should be **DISMISSED**, with prejudice, from this civil action and removed from the style of the case.

As to the remainder of the amended complaint, the undersigned **FINDS** that Plaintiff has demonstrated that genuine issues of material fact exist as to his claim that Lacy violated Plaintiff's Fourth Amendment rights by performing an illegal search of Plaintiff's residence and by falsely arresting him on July 22, 2016. Therefore, the motions for summary judgment on these Fourth Amendment claims should be **DENIED**, and a pretrial hearing and a trial date should be scheduled.

## I.    <u>Relevant Facts and Procedural History</u>

On July 20, 2016, state authorities received a report that Plaintiff had sexually assaulted a six-year-old female child. (ECF Nos. 53-1 at 2-4, 53-2 at 4). Plaintiff was arrested at a residence on July 22, 2016 and appeared for a preliminary hearing before a county magistrate, who found probable cause that Plaintiff committed sexual assault in the first degree and sexual abuse in the first degree. (ECF Nos. 53-1 at 4, 53-2 at 2-3). A Mercer County, West Virginia grand jury subsequently charged Plaintiff with one count

of sexual assault in the first degree and two counts of sexual abuse in the first degree. (ECF No. 53-4 at 2-3). Plaintiff was ultimately tried before a jury and was acquitted of all charges. (ECF No. 55 at 3).

While Plaintiff's criminal case was pending in state court, Plaintiff filed the instant action in this court. (ECF No. 1). In his amended complaint, Plaintiff asserts that Lacy and other members of the Mercer County's Sheriff's Department "illegally entered and searched ... the trailer" where Plaintiff was found on July 22, 2016 and arrested him without a warrant. (ECF No. 33 at 2). Plaintiff alleges that, in the course of the arrest, Lacy snuck behind him, grabbed his left hand, twisted his arm behind his back, and that something "cracked" in Plaintiff's wrist. (*Id.*). Plaintiff contends that he screamed in pain, but Lacy "jerked his arm up higher" and Plaintiff screamed again. (*Id.*). Plaintiff claims that he has "suffered constant pain in [his] left wrist ever since that moment" and cannot use his left hand "without insulting the injury and suffering severely." (*Id.* at 3).

Plaintiff also asserts in the amended complaint that Richmond subjected Plaintiff to excessive force on July 26, 2016, after the conclusion of the preliminary hearing in Plaintiff's criminal case. Specifically, Plaintiff alleges that Richmond grabbed him under his right armpit, jerked him up from the defendant's table, slung him around the courtroom, and pushed him into the hallway. (*Id.*). Plaintiff claims that "something exploded" and it "felt like a volcano erupted" in his lower spine and a "lightning bolt" shot up his spine into his head momentarily paralyzing him. (*Id.*). He describes having severe back pain thereafter and receiving medical treatment for his injuries. (ECF Nos. 1 at 29-31, 13 at 3-22, 33-1 at 1-36).

Plaintiff further contends that Young also used excessive force in the course of removing Plaintiff from the courtroom after a subsequent hearing on June 16, 2017.

3

According to Plaintiff, he attended the hearing in a wheelchair. At the conclusion of the proceedings, Young grabbed the wheelchair and started to roll Plaintiff out of the courtroom. (ECF No. 33 at 3, 4). Young was allegedly "jerking on the wheelchair and slewing it around in the congested hallway." (*Id.* at 3). Plaintiff claims that "the foot rests were missing from the wheelchair causing the left front wheel to run up on [Plaintiff's] left shower shoe," jerking his left foot under the wheelchair and pulling Plaintiff "out of the seat sideways." (*Id.*). Plaintiff's hands and feet were shackled at the time, so he "hobbled a couple steps sideways" to keep from falling. Young then rammed the seat of the wheelchair into Plaintiff's left leg, grabbed Plaintiff by his left shoulder and neck, and jerked Plaintiff down into the wheelchair in an "awkward twisted position." (*Id.*). Plaintiff alleges that ever since that moment, he has experienced an "aggravating pinch" in his lower spine and cannot get in a comfortable position. (*Id.*).

For the "above reasons and several more," Plaintiff asked this Court to award him monetary damages in the amount of $10,000.00 "for each and every month" that Plaintiff was "forced to suffer constant excruciating pain until the moment" that his "back and wrist are repaired to the same normal condition they were in prior to [his] warrantless arrest" on July 22, 2016. (*Id.* at 4).

Defendants filed a motion for summary judgment and amended motion for summary judgment accompanied by memoranda in support. (ECF Nos. 48, 49, 53, 54). Defendants argue that the Court should abstain from ruling on Plaintiff's claim that state authorities performed an illegal search, because Plaintiff was still "being prosecuted in state court for acts directly related to the search;" therefore, a ruling by this Court that the search was illegal would necessarily imply the invalidity of Plaintiff's potential state conviction. (ECF No. 54 at 5-8). Furthermore, Defendants maintain that Plaintiff's claim

4

of excessive force during his arrest fails as a matter of law under the Fourth Amendment's prohibition against unreasonable search and seizure, because Lacy used an objectively reasonable handcuffing technique that was commonly employed in arresting individuals. (*Id.* at 8-10). Defendants additionally assert that Plaintiff's allegations of excessive force by Richmond and Young, which are governed by the Fourteenth Amendment's Due Process Clause, simply do not rise to the level of objectively unreasonable force that was purposefully or knowingly inflicted on Plaintiff. (*Id.* at 11). They indicate that, despite Plaintiff's use of "colorful language," his allegations demonstrate that Richmond and Young were, at most, negligent in escorting Plaintiff from the courtroom. (*Id.* at 11-12). Defendants also argue that they are entitled to qualified immunity from Plaintiff's excessive force claims, because Plaintiff cannot establish a violation of a clearly established constitutional right. (*Id.* at 13-14). Finally, Defendants state that although Plaintiff references his Fifth, Sixth, and Seventh Amendment rights in the amended complaint, he clearly does not allege any facts to establish a constitutional violation under these amendments. (*Id.* at 14-15).

Plaintiff filed a response to Defendants' motion for summary judgment in which he restates the information provided in his amended complaint and adds that the criminal charges against him were resolved with his acquittal on March 15, 2018. (ECF No. 55). Defendants filed a reply to Plaintiff's response. Presumably in light of Plaintiff's acquittal, Defendants take an alternate position with respect to Plaintiff's claim that Lacy conducted an illegal search. Rather than arguing that Plaintiff's claim is barred due to the ongoing state prosecution, Defendants argue that Plaintiff does not establish any protectable interest in the area searched, nor does he offer any "evidence that Defendant Lacy entered the residence aside from his own self-serving assertions." (ECF No. 56 at 6).

## II.    <u>Relevant Legal Principles</u>

Plaintiff has filed his amended complaint pursuant to 42 U.S.C. § 1983, which provides a remedy to parties who are deprived of federally protected civil rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 171-172 (1961). In order to maintain a *prima facie* case under 42 U.S.C. § 1983, a plaintiff must show through factual allegations that he was (1) deprived of a right secured by the Constitution or laws of the United States, and that (2) the deprivation was committed by a person acting under color of state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

The Court is required to liberally construe *pro se* complaints such as the one filed in this case. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

Defendants have moved for summary judgment on Plaintiff's amended complaint. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when no genuine issue of material fact is in dispute, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).

A fact is material if it "might affect the outcome of the suit under the governing law," and a disputed issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 501 U.S. at 248. Assertions of material facts must be supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The Court shall "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 520 (1991). Consequently, motions for summary judgment impose a heavy burden on the moving party as it must be obvious that no material facts are in dispute and no rational trier of fact could find for the nonmoving party. *See Miller v. F.D.I.C.*, 906 F.2d 972, 974 (4th Cir. 1990).

Nonetheless, the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent entry of summary judgment. *Anderson,* 477 U.S. at 252. While any permissible inferences to be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Anderson*, 477 U.S. at 249-50).

Finally, Defendants have raised the defense of qualified immunity in support of their amended motion for summary judgment. The Supreme Court has recognized that "[a] government official sued under § 1983 is entitled to qualified immunity unless the

official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S.Ct. 348, 350 (2014). There are two prongs to the qualified immunity analysis: (1) whether "the facts that a plaintiff has alleged … make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (markings omitted). A court may choose which prong to address first in the qualified immunity inquiry. *Id.* at 236. With respect to the latter prong, "[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S.Ct. 305 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658 (2012)). To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate. However, the universe of existing precedent is not unlimited. Courts [within this circuit] ordinarily need not look beyond the decisions of the Supreme Court, the Fourth Circuit Court of Appeals, and the highest court of the state in which the case arose." *Harper v. Blagg*, No. 2:13-cv-19796, 2015 WL 6509131, at *5 (S.D.W.Va. Oct. 28, 2015) (citations and markings omitted).

## III.   <u>Discussion</u>

Plaintiff asserts that Lacy violated his Fourth Amendment rights by conducting an illegal search and arresting him without a warrant. Plaintiff further claims that Richmond and Young applied excessive force to him in violation of his Fourteenth Amendment rights while Plaintiff was a pretrial detainee awaiting trial. Each claim is addressed below.

### A. Illegal Search

Plaintiff asserts that on the day that he was arrested, Lacy, a Sheriff's Deputy, "illegally entered and searched" the dwelling in which Plaintiff was located. (ECF No. 33

at 1-2). Plaintiff's relationship to the "trailer" in question is not clearly identified in the current record before the Court. (*Id.* at 2). The undersigned is mindful of the fact that in order "[t]o challenge a search under the Fourth Amendment, an individual must be able to show that he has standing, i.e., he must show that he himself had a 'legitimate expectation of privacy' in the area searched." *United States v. Dawson*, 7 F. App'x 208, 209 (4th Cir. 2001) (citations omitted). "A legitimate expectation of privacy is usually demonstrated by showing that the defendant had some property or possessory interest in the area searched." *Id.* In this case, Plaintiff continually refers to the area which Lacy allegedly searched as "a dwelling, "a residence," or "the trailer," and Plaintiff does not specifically assert that he had a property interest, possessory interest, or expectation of privacy in the area searched. (ECF Nos. 1 at 4-5, 33 at 2, 55 at 1). Nevertheless, Plaintiff is a *pro se* litigant and the materials submitted by Defendants repeatedly refer to the location in question as Plaintiff's residence (ECF Nos. 48-1 at 2, 48-2 at 2, 53-1 at 3-4, 53-2 at 5).

Defendants initially asserted that the Court should abstain from ruling on the "illegal search issue" pursuant to the doctrines established in *Younger v. Harris*, 401 U.S. 37 (1971), and *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). (ECF No. 54 at 5-8). As stated by Defendants, in the interest of comity and equity, *Younger* abstention dictates that federal courts should refrain from interfering in ongoing state criminal proceedings. (*Id.* at 5-6). Likewise, *Heck* established that federal courts must dismiss a civil rights action which would necessarily imply the invalidity of a conviction or sentence that had not been overturned. Defendants contend that *Heck* has been extended to also bar claims that would necessarily imply the invalidity of a potential conviction on a pending criminal charge. (*Id.* at 7).

However, Plaintiff asserts—and Defendants do not dispute—that Plaintiff was acquitted of the criminal charges subsequent to Defendants' amended motion for summary judgment. Thus, Plaintiff is no longer the subject of ongoing state criminal proceedings, nor is he raising a challenge under § 1983 that could bear on the validity of any existing or potential criminal conviction as were the concerns in *Younger* and *Heck*. Therefore, Defendants are not entitled to summary judgment on the basis that this Court should abstain from ruling on Plaintiff's claim due to his state prosecution.

Although Defendants have not explicitly acknowledged that their abstention argument is moot, their reply advances an alternative theory for summary judgment that "Plaintiff has not established that he had any ownership interest in the property or that he had any protectable interest in the area." (ECF No. 56 at 5). Defendants further state that even if Plaintiff had an expectation of privacy in the residence, there is "no evidence that Defendant Lacy entered the residence" aside from Plaintiff's "own self-serving assertions." (*Id.* at 6).

The Fourth Amendment protects individuals from unreasonable searches and seizures. Absent special situations, such as consent or exigent circumstances, a search of a home without a warrant is presumptively unreasonable under the Fourth Amendment. *Guerrero v. Moore*, 442 F. App'x 57, 58 (4th Cir. 2011) (citing *Steagald v. United States,* 451 U.S. 204, 211 (1981)); *Smith v. Tolley*, 960 F. Supp. 977, 984 (E.D. Va. 1997) (citing *Payton v. New York,* 445 U.S. 573, 586 (1980)). In this case, Plaintiff asserts that he "heard someone rummaging around inside" of the trailer and he "stepped out into the hallway" to observe Lacy and other officials "searching all thru [sic] the residence." (ECF No. 33 at 2). Plaintiff allegedly asked the individuals to leave, and he exited with some of them, but Lacy "remained inside conducting his own personal search for at least 5

minutes." (*Id.*). The criminal complaint narrative supports Plaintiff's account that at least two officials entered the residence, although it does not specify Lacy by name as one of the deputies that entered. (ECF No. 53-2 at 5).

Plaintiff declared under penalty of perjury in compliance with 28 U.S.C. § 1746(2) that Plaintiff personally observed Lacy conducting the above-stated warrantless search of the trailer on July 22, 2016. (ECF No. 1 at 4-5, 18); *see Duff v. Potter*, 665 F. App'x 242, 243–44 (4th Cir. 2016) ("A verified complaint is the equivalent of an opposing affidavit for summary judgment purposes."). There is, in fact, no evidence at present to dispute Plaintiff's assertion that Lacy performed a search of the residence. The undersigned notes that there was not a warrant for Plaintiff's arrest at the time of the search. (ECF No. 53-2 at 2); *see Steagald*, 451 U.S. at 221 (noting that authorities can enter a suspect's own home to effect an arrest warrant). Therefore, it remains unclear why officials entered the residence and what prompted the search of the residence, if a search indeed occurred. Defendants have offered no other argument in support of summary judgment, except to broadly assert that Plaintiff has failed to prove his claim. Consequently, for the above reasons, genuine issues of material fact preclude summary judgment in Defendants' favor.

Therefore, the undersigned **FINDS** that a genuine issue of material fact exists as to whether Lacy violated Plaintiff's Fourth Amendment rights by allegedly searching Plaintiff's residence without consent and without a warrant. Accordingly, Defendants' motions for summary judgment on this ground should be **DENIED**.

### B. False Arrest

Plaintiff also makes a point to state that Lacy seized him without an arrest warrant. (ECF No. 33 at 2). "An arrest is a form of seizure under the Fourth Amendment." *Souk v.*

*City of Mount Hope*, No. 2:14-CV-26442, 2015 WL 5698509, at *6 (S.D.W. Va. Sept. 28, 2015). A warrantless arrest is "permitted where there is probable cause based on a subjective standard to believe a felony is being or has been committed by the arrested individual, based upon the totality of the circumstances." *Park v. Shiflett*, 250 F.3d 843, 850–51 (4th Cir. 2001). Probable cause exists where "facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *Id.*

Defendants failed to address Plaintiff's claim of false arrest in the motions for summary judgment. However, in support of other arguments, they produced a Report of Investigation demonstrating that Detective-Sergeant Steven A. Sommers of the Mercer County Sheriff's Department ("Sommers") received an investigation referral from the Mercer County Prosecuting Attorney's Office on July 20, 2016 regarding an alleged sexual assault of a minor. (ECF No. 53-1 at 3). According to the report, Sommers learned that Child Protect of Mercer County had already interviewed the alleged six-year-old victim and her nine-year-old sister; therefore, Sommers obtained and reviewed the interview materials. (*Id.*). The six-year-old victim reported that she went to "[Plaintiff's] residence to get a pop" on the date in question and Plaintiff took her into the bedroom, shut the door, and sexually assaulted her; the victim provided graphic detail of the alleged assault. (*Id.* at 3). The victim's nine-year-old sister stated that she went with the victim to Plaintiff's residence on the date in question to get a pop and while they were riding in Plaintiff's truck, Plaintiff "rubbed her leg above her clothes." (*Id.*). The nine-year-old reported that her younger sister disclosed to her that Plaintiff had sexually assaulted her, and the nine-year-old advised their mother, who called 911. (*Id.* at 3-4). Based upon the above information, Sommers and several deputies arrested Plaintiff on July 22, 2016. (*Id.*

at 4).

"Generally, a complaint from a putative victim of a criminal assault is sufficient to establish probable cause." *Smith v. Sims*, 337 F. Supp. 2d 757, 760 (M.D.N.C. 2004), *aff'd*, 121 F. App'x 502 (4th Cir. 2005) (citing *Grimm v. Churchill*, 932 F.2d 674, 675 (7th Cir.1991)). In *Smith*, a *pro se* plaintiff alleged that his constitutional rights were violated when he was charged with a sexual assault that was later swiftly dismissed after blood and hair evidence was tested. *Smith v. Sims*, 337 F. Supp. 2d 757, 758 (M.D.N.C. 2004), *aff'd*, 121 F. App'x 502 (4th Cir. 2005). The district court found that the deputy that made the arrest was entitled to summary judgment on the plaintiff's claim that he was arrested without probable cause. *Id.* at 760. Noting that the deputy acted on "a coherent, detailed report from the putative victim" that clearly supported the charges that were secured against the plaintiff, any reasonable officer in the deputy's position would have believed at that time that a crime had been committed. *Id.*

"Indeed, the Fourth Circuit has recognized that 'it is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of his attacker,' as 'it is difficult to imagine how a police officer could obtain better evidence of probable cause than an identification by name of assailants provided by a victim, unless, perchance, the officer were to witness the crime himself.'" *United States v. Beckham*, 325 F. Supp. 2d 678, 687 (E.D. Va. 2004) (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir.1991)). Therefore, a victim's identification of a suspect will generally constitute probable cause unless "there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what [s]he had seen, or was in some fashion mistaken regarding [her] recollection of the confrontation." *Id.* (quoting *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir.1999)).

Plaintiff does not dispute that the alleged victim reported to authorities that Plaintiff sexually assaulted her. Instead, Plaintiff maintains that exculpatory surveillance camera footage was available for Lacy's immediate review at the time of Plaintiff's arrest, and this footage proved Plaintiff's innocence by establishing that "neither girl ever stepped foot inside the residence" where the assault allegedly took place. (ECF No. 33 at 2). Sommers's Report of Investigation offered by Defendants confirms that Plaintiff stated at the time of his arrest that he "had video of the residence and that he could not have committed the crimes." (ECF No. 53-1 at 4). According to the Report of Investigation, Sommers found that no cameras were located where Plaintiff indicated "on the church across the street," some of the cameras mounted to the residence were not working, and the ones that were working "had poor quality." (*Id.*). Given the conflicting evidence, there is a genuine issue of material fact as to whether Lacy had probable cause to arrest Plaintiff based upon the victim's statement that Plaintiff sexually assaulted her in spite of alleged evidence that the statement was inaccurate. As stated, Defendants' motions for summary judgment are silent on Plaintiff's claim concerning his warrantless arrest and do not expressly argue that Lacy is entitled to summary judgment on that claim. (ECF Nos. 48, 49, 53, 54).

In evaluating Plaintiff's false arrest claim, the undersigned has considered the fact that after Lacy arrested Plaintiff without a warrant, a county magistrate found probable cause that Plaintiff committed sexual assault and abuse and a grand jury returned an indictment charging Plaintiff with such acts. In other words, the magistrate and grand jury found probable cause that Plaintiff committed the acts for which Lacy arrested him. "It is well established that where an officer presents all relevant probable cause evidence to an intermediary, such as a prosecutor, a grand jury, or a magistrate, the intermediary's

14

independent decision to seek a warrant, issue a warrant or return an indictment breaks the causal chain and insulates the officer from a Section 1983 claim based on lack of probable cause for an arrest or prosecution." *Kanode v. Swope*, No. 1:09-cv-1530, 2012 WL 4507602, at *6 (S.D.W. Va. Feb. 22, 2012), *report and recommendation adopted*, 2012 WL 4508138 (S.D.W. Va. Sept. 28, 2012) (citing *Rhodes v. Smithers,* 939 F. Supp. 1256, 1274 (S.D.W. Va. 1995)).

However, as is very critical in this case, an officer cannot be insulated from liability based upon the subsequent findings of probable cause by other participants in the criminal justice system if the officer tainted the findings by concealing facts or failing to disclose exculpatory evidence. *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (holding that "subsequent acts of independent decision-makers (*e.g.,* prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure" and "insulate a police officer from liability" unless the officer provided misleading information, failed to disclose exculpatory information, or brought undue pressure on the prosecutor) (citations omitted). The same theory underlies the rule that "obtaining an arrest warrant does not provide per se evidence of objective reasonableness" for an arrest. *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991). "[J]udicial determination of probable cause does not break the causal chain between the application for the warrant and the improvident arrest if the officer who sought the warrant did not possess probable cause." *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 184 (4th Cir. 1996) (citations and marking omitted). Even if an officer acts upon an arrest warrant, a seizure is unreasonable under the Fourth Amendment if an officer deliberately lied or recklessly excluded material information to obtain the warrant and the untainted facts would not

15

establish probable cause. *Miller v. Prince George's Cty., MD*, 475 F.3d 621, 630–31 (4th Cir. 2007). The same rationale applies to a subsequent probable cause finding by a magistrate or indictment by a grand jury after a warrantless arrest. An officer is not absolved from liability for false arrest simply because of subsequent findings of probable cause, if the officer's actions tainted such findings. *Cunningham v. Ruffin*, No. 1:15-CV-1650, 2016 WL 6396015, at *3-5 (E.D. Va. Oct. 26, 2016) (concluding that magistrate's finding of probable cause after a warrantless arrest, in and of itself, did not resolve false arrest claim against officer)

Here, Plaintiff contends that Lacy deliberately ignored exculpatory evidence when he arrested Plaintiff. Specifically, Plaintiff asserts that he implored Lacy and the other members of the Sheriff's Department to watch surveillance footage, which allegedly showed that the putative victim never entered the premises on the date in question and that Plaintiff could not have sexually assaulted her in the bedroom as she alleged. While Defendants do not offer any affidavits to account for their version of events, the information produced by them indicates that Sommers determined at the time of Lacy's arrest that the alleged exculpatory evidence did not exist because certain cameras were not present and other cameras were not functioning or providing a clear picture. The record before the Court is rather undeveloped on the topic of Plaintiff's alleged false arrest. In any event, when viewing the evidence in the light most favorable to Plaintiff, the undersigned cannot conclude that no genuine issue of material fact exists as to whether Lacy had probable cause to arrest Plaintiff. If exculpatory evidence was indeed available and Lacy deliberately ignored such evidence and arrested Plaintiff, knowingly or recklessly omitting such exculpatory information in the subsequent proceedings, Plaintiff could certainly establish a claim for false arrest under § 1983.

Therefore, based on all of the above, the undersigned **FINDS** that a genuine issue of material fact exists as to whether Lacy violated Plaintiff's Fourth Amendment rights by allegedly arresting him without probable cause. Accordingly, Defendants should be **DENIED** summary judgment on this ground.

### C. Excessive Force During Arrest

Plaintiff also challenges the force that Lacy applied to arrest him. Plaintiff asserts that Lacy snuck around behind him, grabbed his left hand, twisted his arm behind his back, and that something "cracked" in Plaintiff's wrist. (ECF No. 33 at 2). Plaintiff contends that he screamed in pain, but Lacy "jerked [his] arm up higher" and Plaintiff screamed again. (*Id.*). Plaintiff claims that he has "suffered constant pain in [his] left wrist ever since that moment" and cannot not use his left hand "without insulting the injury and suffering severely." (*Id.* at 3).

As noted, the "Fourth Amendment protects the people against unreasonable seizures—i.e., as applicable in this case—against officers' use of excessive force in effecting a seizure." *Redding v. Boulware*, 501 F. App'x 238, 242 (4th Cir. 2012) (citations omitted). When evaluating a claim of excessive force during an arrest, the reviewing court considers whether the force applied in effecting the arrest was *objectively reasonable* given the facts and circumstances confronting the officer at the time. *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (quoting *Graham v. Connor,* 490 U.S. 386, 397 (1989)) (emphasis added). "The officer's actions do not amount to excessive force if they are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." *Id.* (alterations and internal quotation marks omitted). To determine the reasonableness of the force applied, the court examines three factors in particular: (1) the severity of the crime at issue, (2) the extent to which the

17

suspect posed an immediate threat to the safety of the officers or public, and (2) whether the suspect was actively resisting arrest or attempting to flee. *Id.*; *Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 899 (4th Cir.), *cert. denied*, 137 S. Ct. 61 (2016). Additionally, the seriousness of any injury received is an additional consideration in judging whether the amount of force applied was excessive. *Smith v. Murphy*, 634 F. App'x 914, 917 (4th Cir. 2015). Overall, the court should assess the full context of the case "with an eye toward the proportionality of the force in light of all the circumstances.'" *Ray*, 781 F.3d at 101. "Fourth Amendment jurisprudence has long recognized that the right to make an arrest ... necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396.

Here, Defendants argue that Lacy applied a handcuffing method that is "a relatively common and ordinarily accepted non-excessive way to detain an arrestee." (ECF No. 54 at 9) (citing *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002)). Defendants contend that the "uncontroverted evidence" fails to establish that the force used by Lacy was objectively unreasonable or excessive. Consequently, Plaintiff's claim of excessive force during his arrest should be dismissed as a matter of law. (*Id.* at 10).

Considering the first *Graham* factor, Plaintiff was being arrested for felony sexual assault of a minor, which would weigh in favor of Lacy applying some degree of force to handcuff him. However, with respect to the other two *Graham* factors, there is no assertion that Plaintiff posed any immediate danger, resisted arrest in any way, or attempted to flee as is often the case when forceful handcuffing to the degree of injury has been deemed justified during an arrest. *See, e.g., Redding v. Boulware*, 501 F. App'x 238, 243 (4th Cir. 2012) (finding that "the force used by the officers was only so much as was necessary to effect the arrest and, therefore, was not objectively unreasonable" when

officers injured a woman while handcuffing her as she resisted the officers' commands at a traffic stop). Plaintiff alleges that he was passively standing in the driveway speaking to authorities, when Lacy snuck around behind him and forcefully twisted his left arm behind his back to the point that something "cracked" in his wrist; according to Plaintiff, he screamed in pain, but rather than releasing Plaintiff's arm, Lacy "jerked" his arm higher and Plaintiff screamed again. (ECF No. 33 at 2). As to the severity of the injury, Plaintiff alleges constant pain in his left wrist and the inability to use his left hand without exacerbating the pain. Nevertheless, the undersigned notes that Plaintiff does not offer even a scintilla of evidence to corroborate his wrist injury despite having produced voluminous medical records and documents describing the back injury which he claims to have suffered at the hands of Richmond and Young.

In the Fourth Circuit, the point at which forceful handcuffing crosses the line into excessive force is not clearly defined. The Fourth Circuit has stated that "in all events, a standard procedure such as handcuffing would rarely constitute excessive force where the officers were justified … in effecting the underlying arrest." *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002). Notwithstanding this statement, the Fourth Circuit has acknowledged that there is undoubtedly a point at which the process of handcuffing constitutes excessive force. In an unpublished decision, the Fourth Circuit affirmed the district court's denial of an officer's motion for summary judgment on a claim that the officer used excessive force during an arrest. *Farrington v. Whitesell*, No. 94-1212, 1994 WL 560761, at *2 (4th Cir. October 14, 1994). Following a high-speed chase, the suspect was stopped at road block and exited his vehicle stating "I give up. You got me." *Id.* at *1. As the suspect offered no resistance, an officer forced him against the hood of his car, grabbed his left arm, twisted it around to his back, and forced it up so that it nearly

19

touched his head. *Id.* The suspect's arm made an audible pop, which the officer heard. *Id.* The officer then slammed the suspect to the ground, pulled the suspect's left arm behind his back again, pushed it all of the way to the suspect's head, and the suspect's arm "pop[ped] again." *Id.* The suspect stated, "Stop, you broke my arm" to which the officer responded, "[Expletive] you, you deserve it!" and the officer handcuffed the suspect's arms behind his back. *Id.* The suspect subsequently underwent two operations on his arm, which failed to fully restore feeling and range of motion. *Id.* The Fourth Circuit determined that based on the alleged facts, "a reasonable officer in [the officer's] position would have known that the amount of force alleged to have been used was excessive." *Id.* at *2.

A review of district court decisions within the Fourth Circuit has indicated, however, that violent handcuffing involving the twisting a suspect's arm, absent additional factors, may be insufficient to constitute excessive force. *See Machie v. Manger*, No. 09-CV-2196-AW, 2013 WL 3353740, at *10 (D. Md. July 2, 2013), *aff'd sub nom. Machie v. Demme*, 564 F. App'x 17 (4th Cir. 2014) (finding that "the violent handcuffing and the twisting of [the suspect's] arm, on its own, may be insufficient to constitute excessive force," but the violent handcuffing, twisting of the suspect's arm, and the smashing of the suspect's head into a wall, when taken together, possibly constituted a valid claim of excessive force, especially given the undisputed fact that the suspect did not resist arrest); *Johnson v. Dep't of Alcoholic Beverage Control*, No. 3:15-CV-00055, 2016 WL 7235836, at *5 (W.D. Va. Dec. 13, 2016) (finding that the act of grabbing a suspect's arm, holding on to his elbow, attempting to twist his arm behind his back, and grabbing his left arm were not objectively unreasonable ways to effectuate an investigatory stop, but the allegation that the officers slammed the suspect to the ground

asserted a plausible claim for excessive force.). Likewise, looking to the persuasive authority of other circuits, the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") has considered the manner of arrest employed by Lacy to constitute a "minimal degree of force" that was not an objectively unreasonable way to execute a lawful arrest. In *Rodriguez*, the case cited by Defendants, an officer "grabbed the defendant's left arm, twisted it behind the defendant's back, and forced it up to just below the shoulder-blade" as the "defendant fell to the ground, screaming in pain while the officer finished handcuffing him." *Collins v. Ensley*, 498 F. App'x 908, 911 (11th Cir. 2012) (citing *Rodriguez v. Farrell,* 280 F.3d at 1345). The defendant subsequently "required more than 25 surgeries and his arm was ultimately amputated below the elbow." *Id.* Nevertheless, the Eleventh Circuit concluded that the "officer's handcuffing technique was a relatively common and ordinarily accepted non-excessive way to detain an arrestee." *Id.* The Eleventh Circuit explained that "minimal force does not become excessive because severe or tragic results occurred" and courts cannot "use hindsight to judge the acts of police officers." *Id.*

Similarly, in *Collins*, the Eleventh Circuit discussed that an officer had the right to use what the court determined was "minimal force" to effect an arrest of an allegedly intoxicated citizen. *Collins*, 498 F. Appx at 912  (11th Cir. 2012). The citizen was not posing any threat or resisting arrest, but the officer twisted the citizen's arm behind his back and forced it up just below the shoulder blade in the face of substantial pain and loud protestations. *Id.* The citizen allegedly sustained an injury to the ligament in his wrist and had permanent numbness in his thumb as a result of the handcuffing. *Id.* at 913. Again, despite the severity of the injury, the Eleventh Circuit still concluded that the force applied was an ordinarily accepted and non-excessive method to detain an arrestee. *Id.* at 912-13.

21

Considering the facts and circumstances of this case, the undersigned finds that Plaintiff has not identified a genuine issue of material fact that precludes summary judgment on his claim that Lacy applied excessive force in arresting him. While Plaintiff's arrest may have had some resemblance to *Farrington* and other similar cases, there are critical distinctions. Viewing the evidence most favorably to Plaintiff, he alleges that Lacy forcefully pulled his arms behind his back to handcuff him and injured his wrist in so doing. However, the facts provided by Plaintiff are insufficient to demonstrate that Lacy applied gratuitous violence in arresting Plaintiff, but instead, suggest that Lacy used a typical—albeit uncomfortable—handcuffing technique to effect the arrest of a felony suspect. Moreover, despite Plaintiff's claim that he suffered permanent wrist injury, he has not offered any actual evidence that he was diagnosed with a wrist abnormality or sought medical treatment. *See, e.g., Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002) (stating that the Plaintiff's allegation that an officer "handcuffed her, causing her wrists to swell, dragged her to the car and then pulled her into his cruiser" alleged "no injury of any magnitude."); *Andrews v. Elkins*, 227 F. Supp. 2d 488, 492 (M.D.N.C. 2002), *aff'd,* 60 F. App'x 498 (4th Cir. 2003) (noting that the plaintiff had "not produced any evidence of injury to indicate objectively an unreasonable use of force at the time of the arrest"); *Cooper v. City of Virginia Beach, Va.*, 817 F. Supp. 1310, 1319 (E.D. Va. 1993), *aff'd,* 21 F.3d 421 (4th Cir. 1994) (stating that the plaintiff "failed to offer evidence of harm sufficient to support his excessive force claim."). "The right to make an arrest carries with it the right to use the amount of force that a reasonable officer would think necessary to take the person being arrested into custody." *Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988). The inquiry into whether an officer employed excessive force is inherently fact-specific and "requires a careful balancing of the nature and quality of the intrusion on the

individual's Fourth Amendment interests against the countervailing governmental interests at stake." *E.W. by & through T.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018). In this case, the undersigned finds that Lacy's actions in handcuffing Plaintiff behind his back did not constitute excessive force.

In addition, the undersigned finds that Lacy is entitled to qualified immunity on Plaintiff's claim of excessive force during his arrest. For the reasons stated above, the facts alleged by Plaintiff did not make out a violation of a constitutional right. Further, even if the Court were to conclude that Lacy applied excessive force, the undersigned cannot find that Lacy had fair notice under the law at the time that the act of forcefully handcuffing a felony suspect behind his back, without any gratuitous violence or additional circumstances, was unlawful. Qualified immunity operates "to protect officers from the sometimes hazy border between excessive and acceptable force and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001) (internal quotation and markings omitted). For the reasons stated, the undersigned **FINDS** that Lacy is entitled to summary judgment on Plaintiff's Fourth Amendment excessive force claim.

### D. Excessive Force Prior to Trial

The remainder of Plaintiff's amended complaint involves allegations that Richmond and Young applied excessive force while Plaintiff was a pretrial detainee. First, Plaintiff states that Richmond forcefully removed him from the courtroom after his preliminary hearing on July 26, 2016. (ECF No. 33 at 3). According to Plaintiff, Richmond grabbed Plaintiff under his right armpit, "jerked" him up from the defendant's table, "slung" him around the courtroom, and pushed him into the hallway. (*Id.*). Plaintiff asserts that "something exploded" and it "felt like a volcano erupted" in his lower spine

and a "lightning bolt" shot up his spine into his head momentarily paralyzing him. (*Id.*). He complained of severe back pain thereafter and received medical treatment. (ECF No. 33-1 at 1-36).

Furthermore, Plaintiff alleges that after a hearing on June 16, 2017, Young grabbed the wheelchair that Plaintiff was sitting in and proceeded to "drag" Plaintiff out of the courtroom. (ECF No. 33 at 3, 4). Young was allegedly "jerking on the wheelchair and slewing it around in the congested hallway." (*Id.* at 3). Plaintiff contends that "the foot rests were missing from the wheelchair causing the left front wheel to run up on [Plaintiff's] left shower shoe," jerking his left foot under the wheelchair and pulling him "out of the seat sideways." (*Id.*). When Plaintiff "hobbled a couple steps sideways" to keep from falling, Young purportedly rammed the seat of the wheelchair into Plaintiff's left leg, grabbed Plaintiff by his left shoulder and neck, and jerked Plaintiff down into the wheelchair in an "awkward twisted position." (*Id.*). Plaintiff claims that he is left with an aggravating pinch in his lower spine and cannot get in a comfortable position. (*Id.*).

Defendants contend that despite Plaintiff's use of colorful language, the allegations do not rise to the level of objectively unreasonable force that was purposefully or knowingly inflicted on Plaintiff. (ECF No. 54 at 11). Defendants argue that boiled to its essence, Richmond escorted Plaintiff from the courtroom after his hearing and, to the extent that Young ran over Plaintiff's foot with the wheelchair and rammed the wheelchair against Plaintiff in removing Plaintiff from the courtroom, Young's actions were, at most, negligent. (*Id.* at 11-12). Further, Defendants argue that Richmond and Young are entitled to qualified immunity because Plaintiff has not established that they acted with any purpose or intent to punish Plaintiff. (*Id.* at 14).

As noted by Defendants, because Plaintiff was a pretrial detainee when Richmond and Young allegedly inflicted excessive force on him, Plaintiff's claims are governed by the Due Process Clause of the Fourteenth Amendment, which "protects a pretrial detainee from the use of excessive force that amounts to punishment and is not an incident of some other legitimate governmental purpose." *Duff v. Potter*, 665 F. App'x 242, 244 (4th Cir. 2016) (internal markings and citations omitted). "[P]retrial detainees (unlike convicted prisoners) cannot be punished at all, much less maliciously and sadistically." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015) (internal markings and citations omitted). "[L]iability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* at 2472 (citations omitted) (emphasis in original). "Thus, if an officer's Taser goes off by accident or if an officer unintentionally trips and falls on a detainee, causing him harm, the pretrial detainee cannot prevail on an excessive force claim." *Id.* However, "if the use of force is deliberate—*i.e.,* purposeful or knowing—the pretrial detainee's claim may proceed." *Id.*

If the force was deliberate, the court applies an "objective reasonableness" standard like the one considered with respect to Plaintiff's Fourth Amendment excessive force claim. *Id.* at 2472–73; *see, e.g., Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 538 (6th Cir. 2015) (noting that until recently, the standard that applied to excessive force claims by pretrial detainees was unclear, but the Supreme Court recently clarified in *Kingsley* that the proper inquiry was whether "the force purposefully or knowingly used was objectively unreasonable). The objective reasonableness standard is not applied mechanically and turns on the facts and circumstances of each case. *Id.* at 2473. A reviewing court must determine whether the force applied was excessive "from the perspective of a reasonable officer on the scene, including what the officer knew at the

time, not with the 20/20 vision of hindsight" and also "account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of [correctional] officials are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (internal markings and citations omitted). A non-exclusive list of considerations that are potentially relevant to the determination of whether force was excessive include: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* Another important consideration in an excessive force claim is that "an officer enjoys qualified immunity and is not liable for excessive force unless he has violated a clearly established right, such that it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 2474 (citing *Saucier,* 533 U.S. at 202).

The Supreme Court's decree that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment" equally applies to a Fourteenth Amendment excessive force claim. *Coley*, 799 F.3d at 539 (citing *Graham,* 490 U.S. at 396). Although the extent of an injury received can be a consideration, the objective reasonableness "inquiry in both contexts focuses on the *force itself* rather than the injury." *Coley*, 799 F.3d at 539 (emphasis added). Excessive force may cause no extensive damage or, conversely, non-excessive force may result in injury. *Id.* The United States Court of Appeals for the Sixth Circuit has stated that it looks to "whether gratuitous violence has been inflicted." *Id.* Indeed, while the excessive force

26

inquiry is ineludibly fact specific, gratuitous force appears to be a common factor in cases in which officials' actions against a detainee were determined to be potentially unreasonable. *See, e.g., Coley*, 799 F.3d at 539, 541 (finding that an unprovoked shove of a detainee who was powerless because of his arm and leg restraints to stop his head from hitting the wall or his fall to the cement floor and the later use of a chokehold on the still restrained detainee to the point of causing his death were both excessive under Fourteenth Amendment); *Hopper v. Phil Plummer*, 887 F.3d 744, 756 (6th Cir. 2018) (affirming the district court's conclusion that it was unconstitutional "to create asphyxiating conditions by forcibly restraining [a detainee] in a prone position for a prolonged period of time when that individual posed no material threat" and stopped breathing and died); *Estate of Booker v. Gomez*, 745 F.3d 405, 427 (10th Cir. 2014) (holding that "a reasonable jury could conclude that the Defendants' use of substantial pressure on [the detainee's] back, a two-minute carotid hold on his neck, and a taser while [the detainee] was subdued and struggling to breathe in a prone position demonstrated the requisite level of culpability for a due process violation."); *Morabito v. Holmes*, 628 F. App'x 353, 354–55, 358 (6th Cir. 2015) (affirming that genuine issue of material fact existed as to whether officers actions were objectively reasonable when the detainee alleged that the officers entered his cell because they were frustrated with his outbursts and demands for medical treatment and without provocation "knocked [his] head aside," pinned him to the ground, punched him, and used a taser again his neck, although he posed no threat to anyone.).

First, considering Plaintiff's claim that Richmond grabbed him under his right armpit, jerked him up from the defendant's table, slung him around the courtroom, and pushed him into the hallway after his preliminary hearing, the undersigned cannot say

that these actions were objectively unreasonable under the Fourteenth Amendment. Officers typically escort detainees from the courtroom using some degree of force, which can be uncomfortable. *See, e.g., Johnson v. Conway*, 688 F. App'x 700, 709 (11th Cir. 2017) (holding that being handcuffed and walked backward arm in arm with detention officers was reasonably expected to cause some pain and discomfort to the detainee, but did not rise above reasonable coercive measures). While Plaintiff alleges significant back injury and pain, his alleged injury does not transform Richmond's actions into constitutional violations. The question here is whether the force that Richmond applied was objectively unreasonable under the circumstances to the point that it equated with unconstitutional punishment. There is no apparent dispute that Richmond acted with a valid purpose of escorting Plaintiff from the courtroom. Even though Richmond's actions to that end—as described by Plaintiff—were far from genial and were forceful or even aggressive, Richmond's contact with Plaintiff did not rise to the level of gratuitous violence or objectively unreasonable behavior. Furthermore, Richmond's actions fall squarely within the species of behavior that qualified immunity is designed to protect. The undersigned does not find legal precedent which placed Richmond on notice at the time of his actions that roughly jostling a detainee from the courtroom constituted a due process violation. Certainly, there were cases, such as those cited above, to indicate that punching, choking, or tasing a non-aggressive, restrained detainee could amount to objectively unreasonable force. However, Richmond's actions fell within the undeniable gray area that is often presented in law enforcement.

Similarly, the undersigned does not find that Plaintiff's claims against Young offend Plaintiff's Fourteenth Amendment guarantees. Plaintiff asserts that Young roughly navigated Plaintiff's wheelchair through a congested hallway and, because of the lack of

foot rests, the wheel ran up Plaintiff's shower shoe and pulled him out of the seat at which time Young "rammed" the wheelchair toward Plaintiff and "jerked" Plaintiff back down into the seat. Again, there is no asserted dispute that Young acted with a legitimate purpose to escort Plaintiff out of the courtroom after a hearing. Also, like Richmond's actions, while Plaintiff's allegations describe behavior that was forceful or rough, there is no indicia of force or gratuitous violence sufficient to constitute a constitutional violation. Like Richmond, Young is entitled to qualified immunity on Plaintiff's claims. Plaintiff has not presented any genuine issue of material fact that Young violated a constitutional right that was reasonably known to Young at the time. "Not every push or shove" violates the rights afforded to detainees under the Constitution. It would be a significant interference with the operation of law enforcement to hold officers liable for every action they take with respect to moving detainees to and from court appearances. While any physical contact with a detainee can become actionable when excessive force is inflicted, such circumstances are not present in this action.

Therefore, the undersigned **FINDS** that Plaintiff does not assert a genuine issue of material fact that Richmond or Young violated his Fourteenth Amendment rights. The undersigned further **FINDS** that Richmond and Young are entitled to qualified immunity with regard to Plaintiff's excess force claims against them. For that reason, the undersigned **RECOMMENDS** that the presiding District Judge grant summary judgment to Richmond and Young on Plaintiff's excess force claims. The undersigned also **RECOMMENDS** that the presiding District Judge **DISMISS** Richmond and Young from this action on the basis that Plaintiff does not assert any remaining claims against them.

### IV.    <u>Proposal and Recommendation</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the United States District Judge accept and adopt the findings herein and **RECOMMENDS** that Defendants' motion and amended motion for summary judgment, (ECF Nos. 48, 53), be **GRANTED,** in part, and **DENIED**, in part. The motions for summary judgment should be **GRANTED** as to Plaintiff's excess force claims against Lacy, Richmond, and Young and **DENIED** as to Plaintiff's claims that Lacy performed an illegal search and false arrest under the Fourth Amendment. Given the fact that Plaintiff does not assert any surviving claims against Richmond and Young, such defendants should be **DISMISSED**, with prejudice, from this action. The undersigned further recommends that a pretrial hearing and a trial date be scheduled on the remaining claims against Lacy.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure. The parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727

F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Faber, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff, Defendants, counsel of record, and any unrepresented party.

**FILED:** May 11, 2018

Cheryl A. Eifert
United States Magistrate Judge