IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD


LARRY ARNOLD YOUNG,

      Plaintiff,

v.                          CIVIL ACTION NO. 1:17-03633

T.A. LACY; PERRY RICHMAN;
and AARON YOUNG,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendants' Amended Motion for Summary Judgment. ECF No. 53. By Standing Order, this matter was referred to United States Magistrate Judge Cheryl A. Eifert for submission of findings and recommendations regarding disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Eifert submitted her Proposed Findings and Recommendation ("PF&R") to the court on May 11, 2018. ECF No. 57.

In accordance with the provisions of 28 U.S.C. § 636(b), plaintiff was allotted fourteen days, plus three mailing days, in which to file any objections to the PF&R. The failure of any party to file such objections within the time allowed constitutes a waiver of such party's right to a de novo review by this court. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989). Plaintiff and Defendants filed objections. ECF Nos. 58, 60.

# I. BACKGROUND
## A. Underlying Criminal Prosecution

On July 20, 2016, Mercer County Detective-Sergeant S.A. Sommers received an investigation referral from the Mercer County Prosecuting Attorney's Office alleging Larry Young ("plaintiff") sexually assaulted a six-year-old female. ECF No. 53-1. After reviewing the alleged victim and her nine-year-old sister's interview taken by Child Protect of Mercer County, Sommers and other deputies went to plaintiff's home and arrested plaintiff without a warrant on July 22, 2016. Id. A criminal complaint was then filed against the plaintiff charging him with First Degree Sexual Assault and First Degree Sexual Abuse. See ECF No. 53-2. The magistrate judge determined that probable cause existed, and the grand jury returned a three-count indictment against the plaintiff alleging "Sexual Assault-First Degree," "Sexual Abuse by a Parent, Guardian, Custodian or Person in a Position of Trust," and "Sexual Abuse – First Degree". ECF Nos. 53-3; 53-4. After a trial, a jury acquitted the plaintiff on all charges on March 15, 2018. ECF No. 55 at p.3.

## B. Instant Complaint

Before the criminal trial was held, the plaintiff brought this action, alleging five claims of civil rights violations by three (3) defendants, Deputy T.A. Lacy, Perry Richmond, and

2

Aaron Young.[1]  The plaintiff claims that Lacy illegally searched his residence, falsely arrested him, and used excessive force during the arrest.  See ECF No. 1.  Plaintiff also claims, while detained awaiting trial, Richmond and Young used excessive force against him after the conclusion of two pretrial hearings.  Id.

### C. PF&R and the Parties' Objections

In Magistrate Judge Eifert's PF&R, she recommended this court deny summary judgment as to plaintiff's claims that Lacy engaged in an unlawful search of the plaintiff's residence and falsely arrested him.  However, the PF&R recommended the court grant defendants' summary judgment as to all three claims of excessive force.  ECF No. 57.

Both parties filed objections to the PF&R.  ECF Nos. 58, 60.  Defendants claim that plaintiff was not falsely arrested.  ECF No. 58.  Plaintiff continues to claim that Lacy, Richmond, and Young used excessive force against him.  ECF No. 60.  Therefore, each of plaintiff's claims are at issue except Lacy's unlawful search wherein the magistrate judge recommended defendants' motion for summary judgment be denied.  The court now addresses each claim placed into controversy by the parties' objections.

---

[1] The employment positions of defendants, Perry Richmond and Aaron Young, have not been identified to the court at this time.

## II.   STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides:

> The judgment sought shall be rendered forthwith if the
> pleadings, depositions, answers to interrogatories,
> and admissions on file, together with the affidavits,
> if any, show that there is no genuine issue as to any
> material fact and that the moving party is entitled to
> a judgment as a matter of law.

The moving party has the burden of establishing that there is no

genuine issue as to any material fact.  Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986).  This burden can be met by

showing that the nonmoving party has failed to prove an

essential element of the nonmoving party's case for which the

nonmoving party will bear the burden of proof at trial.  Id. at

322.  If the moving party meets this burden, according to the

United States Supreme Court, "there can be 'no genuine issue as

to any material fact,' since a complete failure of proof

concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." Id. at 323.

Once the moving party has met this burden, the burden shifts to

the nonmoving party to produce sufficient evidence for a jury to

return a verdict for that party.

> The mere existence of a scintilla of evidence in
> support of the plaintiff's position will be
> insufficient; there must be evidence on which the jury
> could reasonably find for the plaintiff. The judge's
> inquiry, therefore, unavoidably asks whether
> reasonable jurors could find, by a preponderance of
> the evidence, that the plaintiff is entitled to a
> verdict . . .

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id.</u> at 250-51.

### III. DISCUSSION

**A. FALSE ARREST**

While the plaintiff never explicitly made a claim for false arrest, Magistrate Judge Eifert perceived that plaintiff's Amended Complaint contained such a claim from the following statement:

> T.A. Lacy did sneak up behind me, grabbed my hand, twisted my arm behind my back maiming my left wrist. <u>Arrested me without an Arrest Warrant . . .</u>

ECF No. 33 at p.7; <u>see</u> <u>also</u> <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985) (emphasizing imputed duty of liberal construction for pro se plaintiffs). Defendants did not perceive a false arrest claim and as a result, their motion for summary judgment did not use any ink arguing the issue. <u>See</u> <u>generally</u> ECF No. 54. Now, given defendant's opportunity to brief the issue, the court reviews whether Lacy had probable cause to arrest the plaintiff.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or

> affirmation, and particularly describing the place to be
> searched, and the place or things to be searched.

U.S. Const. amend. IV.  Thus, because arrests are "seizures" of "persons," the Fourth Amendment establishes that arrests must be justified by a finding of probable cause. See id.

Warrantless arrests are permitted where there is probable cause to believe a felony has been committed by the arrested individual, based upon "the totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 230-31 (1983); United States v. Watson, 423 U.S. 411, 424 (1976) (holding warrantless arrests to be permitted if the officer has probable cause to believe a felony has been committed, even if committed outside the officer's presence).  If an arrest is made without a warrant, a defendant must be brought before a judicial officer without unnecessary delay to make the determination of whether probable cause existed at the time of the arrest. See Fed. R.Crim.5.

Recently, the Supreme Court explained the legal landscape for warrantless arrests in D.C. v. Wesby,

> To determine whether an officer had probable cause for
> an arrest, we examine the events leading up to the
> arrest, and then decide whether these historical
> facts, viewed from the standpoint of an objectively
> reasonable police officer, amount to probable cause.
> Because probable cause deals with probabilities and
> depends on the totality of the circumstances, it is a
> fluid concept that is not readily, or even usefully,
> reduced to a neat set of legal rules.  It requires
> only a probability or substantial chance of criminal
> activity, not an actual showing of such activity.
> Probable cause is not a high bar.

138 U.S. 577, 585-86 (2018) (emphasis added; citations and internal quotations omitted).  Moreover, the court considers the facts leading up to the arrest in their totality since "the whole is often greater than the sum of its parts."  Id.

Therefore, if "the facts and circumstances within [the Sheriff's Department's collective] knowledge . . . warrant a prudent person in believing that the [suspect] had committed or was committing an offense," Beck v. Ohio, 379 U.S. 89, 91 (1964), an officer of that agency, acting in good-faith reliance upon such "facts and circumstances," has probable cause to effectuate an arrest.  U.S. v. Hensley, 469 U.S. 221, 232 (1985).

Reviewing in the collective the factors leading to the plaintiff's arrest, the court determines that there was sufficient probable cause for Lacy to arrest the plaintiff without a warrant.

Before arresting the plaintiff, Detective-Sergeant Sommers was responsible for investigating the complaint against plaintiff.  Sommers initially received an investigative referral from the Mercer County Prosecuting Attorney's Office on July 20, 2016.  ECF No. 53-1 at p.3.  From this report, Sommers learned that the six-year-old alleged victim and her nine-year-old sister had been interviewed by Child Protect of Mercer County.

Id.  In this interview, the six-year-old alleged victim stated

that she:

> rode to [plaintiff's] residence to get a pop.  While
> in the residence Larry took her to his bedroom, shut
> the door, and sat on the bed.  While sitting on the
> bed [plaintiff] pulled her underwear down a little,
> and put his finger in her "V"; she later identified
> her vagina as her "V".  She then stated that the
> accused took out his private, grabbed her hand, and
> made her touch it, describing his private as being
> greasy.  She also disclosed that prior to arriving at
> his residence he was rubbing her sister's [] leg in
> his truck.

ECF NO. 53-1 at p.3.  Four days after the alleged victim was

interviewed, Child Protect of Mercer County interviewed the

alleged victim's sister, who made statements that the plaintiff

took her and her sister to plaintiff's home "to get a pop" and

"rubbed her leg above her clothes."  Id.  During the interview,

the alleged victim's sister further disclosed that she was told

by the alleged victim that the alleged victim had been assaulted

by the plaintiff, and then the sister told this information to

their mother.  Id. at pp. 3-4.  The alleged victim's mother then

called 911.  Id.  After reviewing Child Protect of Mercer

County's interview with the alleged victim and her sister,

Sommers confirmed with the alleged victim's mother the alleged

assault.  Id. at p.4.

The consistent statements of the alleged victim, the

alleged victim's nine-year-old sister, and their mother indicate

a reasonable probability that the plaintiff committed sexual assault. See Torchinsky v. Siwinski, 942 F.2d 257, 262 (4th Cir. 1991) ("It is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of his attacker. Indeed, it is difficult to imagine how a police officer could obtain better evidence of probable cause than an identification by name of assailants provided by a victim, unless, perchance, the officer was to witness the crime himself.") (internal citation omitted). Moreover, the interview of the six-year-old alleged victim graphically details the plaintiff's alleged actions.

Furthermore, although not conclusive to the court's decision, the court considers the fact that after the defendant's arrest, a county magistrate judge determined that there was probable cause to believe that plaintiff had committed the offenses he was arrested for.

Therefore, the information shared with the police by the alleged victim's mother, that was corroborated by consistent statements made by the six-year-old alleged victim and the alleged victim's nine-year-old sister in the interview conducted by Child Protect of Mercer County, establishes a reasonable probability, and thus probable cause, that the plaintiff committed the crime he was arrested for. See, e.g., Gates, 462 U.S. at 242 (explaining that "in making a warrantless arrest an

officer may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.").

Plaintiff contends that the Sheriff's Office deliberately ignored exculpatory evidence. Specifically, plaintiff asserts that he asked Lacy and the other members of the Sheriff's Department to watch surveillance footage, which allegedly showed that the putative victim never entered the premises on the date in question, and they did not do so. ECF No. 60 at p.11. However, as documented in the Report of Investigation, Sommers did in fact investigate the cameras as requested by plaintiff, and they discovered that: (a) there was no surveillance camera "on the church across the street," as indicated by plaintiff; and (b) the cameras mounted at the residence were either not working or had poor quality. ECF No.53-1 at 4. In fact, plaintiff acknowledged that "one line going to the camera filming my son's house had been bitten into by a kitten." ECF No.60 at p.11. Plaintiff explained that, "[a]ll that was required to activate it was to roll the place where the kitten bit into the wire between your fingers and the camera would come back on picture perfect." Id. Based upon these statements, there is not a genuine issue of material fact as to whether the camera(s) were in a functioning state.

Therefore, it cannot be concluded that the Sheriff's Office deliberately ignored exculpatory evidence, as plaintiff argues, because the Sheriff's Office attempted to view the camera footage. The Sheriff's Office justifiably determined that the cameras were not a source of evidence they could view. Based upon the parties' statements and the record, there is not conflicting evidence as to whether the camera(s) were in a working state, and thus it cannot be concluded that viewing the footage would have impacted a finding of probable cause prior to the arrest.

Next, plaintiff contends that the investigation was tainted because "Sommers is the double first cousin to the accuser." ECF No. 60 at p.3. However, even if Sommers is related to the alleged victims, the facts of this case clearly indicate that probable cause was present to arrest the plaintiff.

Finally, plaintiff's objections stated that because he was proven not guilty on all counts, Lacy was not justified in arresting him. ECF No. 60 at p.1. Again, the standard the court must consider is whether under the totality of the circumstances at the time of the arrest, Lacy had probable cause to arrest him. See Gates, 462 U.S. at 230-31. The fact that the plaintiff was later found not guilty is irrelevant to the determination of whether the arrest was constitutional.

Accordingly, the arrest made by Lacy was supported by probable cause, where Lacy reasonably relied upon Sommers' investigation which found probable cause from the corroborating statements made by the putative victim, the putative victim's mother, and the putative victim's nine-year-old sister. Thus, even viewing the evidence in the light most favorable to the plaintiff, the court concludes that the arrest was based on probable cause and that the plaintiff suffered no violation of his Fourth Amendment constitutional rights by being arrested by Lacy. Therefore, the court finds that no genuine issue of material fact exists as to whether Lacy violated the plaintiff's Fourth Amendment rights by allegedly falsely arresting plaintiff and grants the defendant's motion for summary judgment.

### B. Excessive Force

Plaintiff's objections to the PF&R may be summarized as follows:

> T.A. Lacy has no cause sneaking up behind me and twisting my left arm up high behind my back cracking something in my wrist causing excruciating pain and suffering ever since that moment on 7/22/2016. On 7/26/2016 Perry Richmond had no cause sneaking up behind be (sic), jerking me up from defendant's table, slinging me around is the courtroom, pushing me out into the hallway causing at least a disc to slip in my lower spine. On 6/22/17 Arron (sic) Lacy had no cause pawing me by my right shoulder and neck, hooking his fingers in my shirt collar and jerking me down in the County's unequipped with feet rests wheelchair in an awkward twisted position causing at least a pinched nerve in my lower spine causing a constant agitating pinch on the right side of my lower spine ever since that moment and cannot get in a comfortable position.

I live in constant pain and suffering 24/7 due to the actions toward my-self by these three defendants. Therefore, Plaintiff has demonstrated that genuine issues of material fact exist to the unjustified assaults from behind by all three defendants . . .

ECF. NO. 60.

For both claims of excessive force (during arrest and post-arrest), defendants denied plaintiff's claims, asserted their right to qualified immunity, and moved for summary judgment. ECF NO. 22,53.

The defendants assert "they are entitled to qualified immunity from liability because these defendants acted lawfully in all actions taken by them with regard to plaintiff." ECF NO. 22 at p.2. The Supreme Court has explained that the doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A right is clearly established only if "a reasonable official would understand that what he is doing violates that right." Carroll v. Carman, 135 S. Ct. 348, 350 (2014).

The Supreme Court has set forth two factors for resolving the qualified immunity claims of government officials. See generally, Pearson v. Callahan, 555 U.S. 223 (2009). In deciding whether government officials are protected by qualified

immunity, the court must decide whether the facts that a
plaintiff has shown make out a violation of a constitutional
right. Id. at 201. Additionally, the court determines whether
the right at issue was "clearly established" at the time of
defendant's alleged misconduct.[2] Id.

### i. Lacy's Alleged Excessive Force During Arrest

Magistrate Judge Eifert found that Lacy was entitled to
summary judgment regarding plaintiff's Fourth Amendment claim
for excessive force during an arrest because there was no
genuine issue of material fact concerning the constitutionality
of the arrest. The court agrees with and affirms Magistrate
Judge Eifert's finding for summary judgment in favor of
defendants. The court further finds that Lacy is entitled to
qualified immunity because the facts do not establish that
plaintiff's constitutional right against excessive force during
his arrest was violated. See Pearson, 555 U.S. at 243 (holding
that "petitioners [were] entitled to qualified immunity because
[they] . . . did not violate clearly established law.").

"When a plaintiff has alleged that an officer employed
excessive force in making an arrest, the federal right is the

---

[2] Because the Fourth Amendment right against unreasonable
seizures and a pretrial detainee's right against the use of
excessive forth, flowing from the Due Process Clause of the
Fourteenth Amendment, are clearly establish, it is unnecessary
for this court to analyze this portion of the qualified immunity
inquiry. See U.S. Const. amends. IV, XIV.

Fourth Amendment right against unreasonable seizures." <u>Smith v.</u>
<u>Ray</u>, 781 F.3d 95, 100 (2015).  To determine whether a Fourth
Amendment right against the use of excessive force during an
arrest has been violated, the court considers whether the force
applied in effecting the arrest was objectively reasonable given
the facts and circumstances confronting the officer at the time
of the arrest.  <u>See</u> <u>id</u>. at 101 (citing <u>Graham v. Connor</u>, 490
U.S. 386, 397 (1989)).  To determine reasonableness, the court
looks to three factors: (1) the severity of the crime (2) the
extent to which the suspect posed an immediate threat to the
safety of the officers or public; and (3) whether the suspect
actively resisted arrested.  <u>Id.</u>  Additionally, the seriousness
of any injury is considered by the court in determining whether
the amount of force was excessive.  <u>See</u> <u>Smith v. Murphy</u>, 624
F.App'x 914, 917 (4th Cir. 2015).

Here, the alleged crime was severe.  Plaintiff was being
arrested for felony sexual assault of a minor.  As Magistrate
Judge Eifert pointed out, this factor weighs in favor of Lacy
applying some degree of force to handcuff plaintiff.  ECF NO. 57
at p.18.  As to the second and third factors, however, there is
no assertion that plaintiff posed an immediate threat to the
safety of the officers or the public nor is there evidence that
plaintiff actively resisted arrest.  Of course, these two
factors do not weigh in favor of the greater force being applied

during the arrest. Nevertheless, these factors are not
conclusive and are to be given weight in accordance with the
force applied in the arrest. See, Waterman v. Batton, 393 F.3d
471, 481 (4th Cir. 2005) (explaining that to properly consider
the reasonableness of force employed we must "view it in full
context, with an eye toward the proportionality of the force in
light of all the circumstances.").

During the arrest, plaintiff alleges that he was standing
in the driveway speaking to the police officers, when Lacy
"[snuck] up behind [him] and twist[ed] [his] left arm up high
behind [his] back cracking something in [his] wrist. ECF NO. 33
at p.2. However, defendants argue that Lacy applied a
handcuffing method that is "a relatively common and ordinarily
accepted non-excessive way to detain an arrestee." ECF NO. 54
at p.9. Defendants also argue that there is no evidence on the
record that establishes the force used by Lacey was excessive.
ECF NO. 54 at p.10.

Lastly, the court considers the severity of plaintiff's
wrist injury, which is allegedly a result of the arrest. In
response to the PF&R finding that "[d]espite plaintiff's claim
that he suffered permanent wrist injury, he has not offered any
actual evidence . . .", plaintiff explained that "[in the]
S.R.J. in Beckley, there is practically no medical assistance."
Id. at 12. The plaintiff also objected by stating that an x-ray

he had done on his wrist came back negative although he was in pain, and "[o]ne Doctor just visually [ ] stated that it was messed up[ ]" without providing any detail as to the infirmity. Id. at 12-13. This lack of evidence undercuts plaintiff's argument that Lacy used excessive force in executing the arrest. Thus, the court finds that plaintiff has failed to provide any evidence that his wrist is injured from the arrest or is injured to the level of severity that plaintiff contends.

As Magistrate Judge Eifert explained in the PF&R, Fourth Circuit district court decisions indicate that the violent handcuffing involving the twisting a suspect's arm, absent additional factors, may be insufficient to constitute excessive force. See Machie v. Manger, No.09-CV-2196-AW, 2013 WL 3353740, at*10 (D.Md. July 2,2013),aff'd sub nom. Machie v. Demme, 564 F. App'x 17 (4th Cir. 2014) (holding that "the violent handcuffing and the twisting of [the suspect's] arm, on its own, may be insufficient to constitute excessive force," but the violent handcuffing, twisting of the suspect's arm, and the smashing of the suspect's head into the wall, when taken together, possibly constituted a valid claim of excessive force, especially given the undisputed fact that the suspect did not resist arrest.).

Based upon the above-mentioned evidence, Lacy's arrest of the plaintiff was objectively reasonable. He arrested plaintiff for a federal offense based upon probable cause, and although it

is likely he used force to pull the plaintiff's arms behind his back, the plaintiff does not allege that Lacy took any additional forceful action. Furthermore, the fact that there is no evidence to demonstrate that the plaintiff suffered a serious injury as a result of the arrest supports the conclusion that Lacy did not apply excessive force when making his arrest of the plaintiff. See, e.g., Murphy, 624 F.App'x at 917. Therefore, because Lacy's conduct did not violated a clearly established constitutional right, the right against unreasonable seizures (i.e., arrests), qualified immunity is applicable.

Accordingly, the court affirms the proposed finding of the magistrate judge and grants summary judgement in favor of the defendant for the claim of excessive force during arrest.

### ii.  Alleged Post-Arrest Excessive Force

Plaintiff's final objection is that Richmond and Young ("defendants") applied excessive force while plaintiff was a pretrial detainee.  Magistrate Judge Eifert found that plaintiff did not assert a genuine issue of material fact that the defendants violated his Fourteenth Amendment rights and recommended that the defendants be granted summary judgment. See ECF NO. 57 at p.29.  For the reasons discussed below, the court agrees with the finding of Magistrate Judge Eifert and grants summary judgment in favor of the defendants.

18

The defendants argue that they are entitled qualified immunity from plaintiff's claim for post-arrest excessive force. <u>See</u> EFC No. 22 at p.2. For the purposes of determining whether the defendants are protected by qualified immunity, the court must determine initially whether there was in fact a violation of plaintiff's Due Process right against excessive force as a pretrial detainee. <u>See</u> <u>Pearson</u>, 555 U.S. at 201.

Excessive force claims brought by pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment. <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 395 n.10 (1989). Recently the Supreme Court in <u>Kingsley v. Hendrickson</u>, 135 S. Ct. 2466, 2473 (2015) held that,

> [A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable. Nevertheless, a court cannot apply this standard mechanically . . . A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. . .

Moreover, while the Supreme Court indicated that the list was not exhaustive:

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id. Furthermore, although the extent of an injury received can be a consideration, the objective reasonableness "inquiry in both contexts focuses on the force itself rather than the injury." Coley v. Lucas Cty., Ohio, 799 F.3d 530, 539 (6th Cir. 2015).

The case at hand is analogous to Strickland v. Turner, No. 9:15-CV-275-PMD-BM, 2017 WL 5589575, at *2 (D.S.C. Nov. 21, 2017), wherein the plaintiff alleged that a corrections officer "forcefully pinched him on one occasion as he was being removed from a restraint chair." Mindful of the fact that the plaintiff did not allege that this pinch resulted in any physical injury, the court held that plaintiff's allegation of this "deliberate and unprovoked" act was not objectively unreasonable in light of the fact that "prison management 'may require and justify the occasional use of a degree of intentional force' against pretrial detainees." Id. (citing Kingsley, 135 S. Ct. at 2475).

Here, plaintiff claims that Richmond snuck up behind him, "jerking [him] up from defendant's table, slinging [him] around in the courtroom, pushing [him] out into the hallway causing at least a disc to slip in my lower spine." ECF No. 60 at p.1. Next, plaintiff alleges that defendant Young on a number of occasions "paw[ed] [him' by [his] right shoulder and neck, hooking his fingers in my shirt collar and jerking me down in the County's unequipped with feet rests wheelchair in an awkward

twisted position causing at least a pinched nerve in my lower spine causing a constant agitating pinch on the right side of my lower spine ever since that moment and cannot get in a comfortable position." ECF No. 60 at pp 1-2.

The defendants argue that "while Plaintiff uses colorful language to describe the actions, it was nothing more than removing Plaintiff from the courtroom following Plaintiff's preliminary hearing." ECF NO. 54 at p.11. The defendants explain that,

> Boiled to its essence, Defendant Richman escorted Plaintiff from the courtroom following the preliminary hearing to take him to the holding cells. Similarly, with respect to the incident involving the wheelchair, Plaintiff again uses colorful language to describe Defendant Young removing Plaintiff from a courtroom following a hearing.

Id. at 12.

Similar to Strickland, while it is undisputed that the officers applied force to the plaintiff when escorting him around and from the courtroom, based upon the evidence, the force applied does not appear to be objectively unreasonable. See Strickland, No. 9:15-CV-275-PMD-BM, 2017 WL 5589575, at *2; but see, Sawyer v. Ashbury, 537 Fed.Appx. 283, 296 (4th Cir. 2013) (holding that "a videotape of detention center incident clearly showing that deputy sheriff struck pretrial detainee in the face at least once while two deputies began to hold him, in response to detainee's insults and refusal to stand up,

irrefutably established that deputy used excessive force in violation of detainee's Fourteenth Amendment due process rights.").

Although plaintiff complains that he is in excruciating pain from the officer's action, he has failed to demonstrate that the force used against him by Richmond was "objectively unreasonable." See Kingsley, 135 S. Ct. at 2473 (holding that "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."). The plaintiff's alleged injuries, although taken into consideration, cannot be given substantial weight because plaintiff has offered no evidence to prove that he is in fact injured, let alone that he was injured as a result of Richmond and defendant Young's actions.

Upon review of both party's arguments and objections, the court does not find that a genuine issue of material fact exists as to whether the force applied by Richmond to the plaintiff was objectively unreasonable. Additionally, because it has not been established that the plaintiff's Fourteenth Amendment due process rights have been violated, the defendants are protected by qualified immunity. See Pearson, 555 U.S. at 201. Accordingly, the court grants summary judgment in favor of the defendants as to the plaintiff's claim of post-arrest excessive force.

## IV.  Conclusion

Accordingly, the court **OVERRULES** plaintiff's objections and sustains defendants' objections to Magistrate Judge Eifert's PF&R.  The court **ADOPTS** the factual and legal analysis contained within the PF&R except as it relates to plaintiff's claim that he was unlawfully arrested.  The court **GRANTS** defendants' motion for summary judgment in favor of defendants as it relates to plaintiff's claim that he was unlawfully arrested, that the defendants use excessive force against plaintiff during the arrest, and that the defendants used excessive force against the plaintiff while a pretrial detainee.  Neither party made objections to Magistrate Judge Eifert's PF&R as it relates to plaintiff's unlawful search claim.  Therefore, **plaintiff's unlawful search claim remains viable** and the motion for summary judgment is **DENIED** as to that claim.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to counsel of record and to petitioner, pro se.

IT IS SO ORDERED on this 28th day of September, 2018.

ENTER:

David A.  Faber
Senior United States District Judge