IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

LARRY ARNOLD YOUNG,

    Plaintiff,

v.                                        CIVIL ACTION NO. 1:17-03633

T.A. LACY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

On March 31, 2020, the court ruled on the following
motions:  plaintiff's Motion in Limine, (ECF No. 84), Motion for
Appointment of Counsel and Renewed Motion for Appointment of
Counsel, (ECF Nos. 86 and 97), and Motion for Summary Judgment,
(ECF No. 98), and defendant's Motion for Summary Judgment, (ECF
No. 93), Motion to Strike Affidavit, (ECF No. 99), Omnibus
Motion in Limine, (ECF No. 104), Motion in Limine, (ECF No.
105), and Motion to Strike Plaintiff's Sur-Reply.  (ECF No.
108.)  The reasons for these rulings follow.

## I.  General Factual and Procedural Background

On July 20, 2016, state authorities received a report that
plaintiff sexually assaulted a six-year-old female child.  (ECF
Nos. 53-1, 53-2.)  Plaintiff was arrested at a residence on July
22, 2016 and appeared for a preliminary hearing before a county
magistrate, who found probable cause that plaintiff committed
sexual assault in the first degree and sexual abuse in the first

degree.  (ECF Nos. 53-1, 53-2.)  A Mercer County, West Virginia
grand jury subsequently charged plaintiff with one count of
sexual assault in the first degree and two counts of sexual
abuse in the first degree.  (ECF No. 53-4.)  Plaintiff was
ultimately tried before a jury and acquitted of all charges on
March 15, 2018.  (ECF No. 55.)

While plaintiff's criminal case was pending in state court,
plaintiff filed Case No. 1:17-cv-03633 in this court, naming as
defendants T.A. Lacy ("Lacy"), Aaron Young ("Young"), and Perry
Richmond ("Richmond").  (ECF No. 1.)  In an amended complaint,
plaintiff asserted that Steven Sommers ("Sommers"), Lacy, and
Jeremy Farmer ("Farmer") "illegally entered and searched . . .
the trailer" where plaintiff was found on July 22, 2016, and
arrested him without a warrant.  (ECF No. 33 at 2.)  Plaintiff
claimed that Lacy "illegally search[ed] [the trailer] after he
was asked to leave the premises."  (Id. at 3.)  Plaintiff also
alleged that, in the course of the arrest, Lacy snuck behind
him, grabbed his left hand, twisted his arm behind his back, and
something "cracked" in plaintiff's wrist.  (Id. at 2.)
Plaintiff claimed that he has "suffered constant pain in [his]
left wrist ever since that moment" and could not use his left
hand "without insulting the injury and suffering severely."
(Id. at 3.)  Plaintiff further asserted that Richmond and Young
applied excessive force in removing him from the courtroom after

2

two of his criminal hearings.  (ECF Nos. 1 at 29-31, 13 at 3-22, 33, and 33-1 at 1-36.)

Defendants filed a motion for summary judgment and amended motion for summary judgment accompanied by memoranda in support, to which plaintiff filed a response.  (ECF Nos. 48, 49, 53, 54, and 55.)  On May 11, 2018, Magistrate Judge Cheryl Eifert issued Proposed Findings and Recommendations ("PF&R"), concluding that plaintiff had raised genuine issues of fact with respect to his Fourth Amendment claims of an illegal search and false arrest, but failed to state valid claims of excessive force.  (ECF No. 57.)  Magistrate Judge Eifert recommended that defendants Richmond and Young be dismissed from the case; that the excessive force claim against Lacy be dismissed, and that plaintiff be permitted to proceed on his claims against Lacy of improper search and false arrest.  (Id.)

On September 28, 2018, this court adopted the findings and recommendations in the PF&R, except this court found no factual basis to support the false arrest claim.  (ECF No. 65.) Consequently, the court dismissed defendants Richmond and Young from the case, dismissed the false arrest and excessive force claims against Lacy, and allowed plaintiff to proceed with his Fourth Amendment illegal search claim against Lacy.  (Id.)

On October 17, 2018, plaintiff filed a Notice of Appeal with the Fourth Circuit.  (ECF No. 70.)  The Fourth Circuit

dismissed the appeal on January 30, 2019 due to plaintiff's failure to prosecute.  (ECF No. 78.)  On April 18, 2019, the Fourth Circuit reopened plaintiff's appeal, noting that plaintiff evidently did not receive critical filings in the matter because the Clerk of the Fourth Circuit was not using the correct mailing address.  (ECF No. 91.)  On June 13, 2019, this court stayed plaintiff's remaining claim pending completion of plaintiff's appeal.  (ECF No. 110.)  On August 26, 2019, the Fourth Circuit denied the appeal on the ground that it lacked jurisdiction over the matter, because this court had not issued a final order, nor an appealable interlocutory or collateral order.  (ECF No. 111.)

## II.  **The Motions at Issue**

### a. **Plaintiff's Motions for Appointment of Counsel**

On August 15, 2017, plaintiff filed a motion for appointment of counsel.  (ECF No. 12.)  Magistrate Judge Eifert denied that motion without prejudice.  (ECF No. 20.)  On April 4, 2019, plaintiff filed a renewed motion for appointment of counsel, asking the court to appoint counsel to represent him because he is not trained in law and cannot afford counsel. (ECF No. 86.)  Then on May 17, 2019, plaintiff again filed a renewed motion for appointment of counsel, making the same argument as above and adding that a trial date was approaching. (ECF No. 97.)

4

**b. Parties' Motions for Summary Judgment**

On May 1, 2019, defendant Lacy filed a motion for summary judgment, arguing that plaintiff's remaining unlawful entry and search claim fails because defendant is entitled to qualified immunity. (ECF No. 94.) Defendant argues that he is entitled to qualified immunity because his entry into plaintiff's trailer occurred only after his partner, Detective Sommers, had already entered the home. He also asserts in an affidavit that he was not in a position to be able to hear whether plaintiff responded to Detective Sommers' yells inside the home requesting entry, and that at no time did plaintiff ever request or demand that the officers leave the residence. (ECF No. 93, Ex. 2 at ¶¶ 5-8.) Thus, defendant claims he entered the residence both to protect Sommers and because he reasonably believed that Sommers had plaintiff's consent to enter. Moreover, he contends that even if his entry did violate the Fourth Amendment, it is not clearly established that a subsequent entry in these circumstances is unlawful.

Plaintiff filed a Response on May 17, 2019,[1] countering that Sommers never yelled inside the residence requesting permission

---

[1] The court notes that plaintiff's Response (which included an opposing motion for summary judgment) was filed out of time, and that he never sought leave of the court to file out of time. Plaintiff, in a later sur-reply, asserts that he had an operation on May 5, 2019, which required him to be hospitalized and reduced his ability to timely file a Response. (ECF No.

to enter, and that after learning the officers did not have a search warrant, plaintiff asked the officers to leave the residence. (ECF No. 98 at ¶ 2.) Additionally, plaintiff claims that after he requested the officers leave, Lacy remained in the residence and continued his search, and emerged from the residence several minutes later carrying a rifle. (Id. at ¶¶ 2, 4, 10.) Plaintiff argues that he is entitled to summary judgment on these grounds. Plaintiff also directs the court's attention to the affidavits of Kevin and Brandon Harris, (ECF Nos. 96-1 and 96-2), as support for his claims.[2]

Defendant responds that plaintiff has presented no evidence that creates a genuine issue of material fact on defendant's qualified immunity argument. (ECF No. 100.) Defendant contends that his earlier argument for why qualified immunity applies

---

106.) He also asserts that he is pro se and thus the court should grant him some leniency on procedural matters. (Id.) The court concludes that while in the future plaintiff should file a motion requesting permission to file out of time, for good cause shown and in the interests of justice, the court will consider plaintiff's Response and his motion for summary judgment to be timely filed. Cf. Torres v. Oakland Scavenger Co., 487 U.S. 312, 316 (1988) ("[T]he rules of procedure should be liberally construed [so] that 'mere technicalities' [do] not stand in the way of consideration of a case on its merits.").

Note that the above referenced sections of plaintiff's sur-reply are not the subject of defendant's motion to strike, (ECF No. 108), discussed infra Part III.c.

[2] The court addresses these affidavits in its consideration of defendant's motions to strike. See infra Part III.c.

holds firm, as once Sommers breached the entry of the residence,
Lacy's entry became reasonable, and even if Lacy's subsequent
entry into the residence constitutes a Fourth Amendment
violation, the law was not clearly established at the time that
an officer cannot follow his superior into a residence.  (See
id.)  Lastly, defendant argues that plaintiff's motion for
summary judgment should not be granted because a genuine issue
of material fact remains as to whether the officers knocked
prior to entering the residence and whether their entry was
reasonable.  (Id.)

Plaintiff later filed a sur-reply, (ECF No. 106), which the
court will address in its consideration of defendant's motions
to strike.  See infra Part III.c.

### c. Defendant's Motions to Strike

On May 22, 2019, defendant filed a motion to strike the
affidavits of Kevin and Brandon Harris, (ECF Nos. 96 and 96-1),
because the affidavits were deficient and improper.  (ECF No.
99.)  Specifically, defendant points out that the affidavits
were unnotarized, in violation of West Virginia Code §§ 39-4-15,
39-4-16, and do not establish they are made on personal
knowledge, in violation of Federal Rule of Civil Procedure
56(c)(4).  Plaintiff responded that the affidavits were proper

and the notary accidentally forgot to stamp the documents.[3]  (ECF
No. 106.)

Defendant filed a second motion to strike on June 10, 2019,
seeking to strike plaintiff's sur-reply portion of plaintiff's
response to defendant's reply, (ECF No. 106), because plaintiff
filed such sur-reply without leave of court, in violation of
Local Rule of Civil Procedure 7.1(a)(7).  (ECF No. 108.)
Plaintiff filed no response to this motion to strike.

### d. Parties' Motions in Limine

Plaintiff filed a motion in limine on March 27, 2019,
asking the court to issue orders preventing defendant from
presenting any evidence of plaintiff's past criminal history and
preventing defendant from presenting any evidence of any past
lawsuits filed by plaintiff.  (ECF No. 84.)

Defendant responded to this motion, arguing that plaintiff
has not identified the criminal history or past lawsuits he is
seeking the court to exclude.  (ECF No. 89.)  Defendant lists
the criminal history and past lawsuits he presumes that
plaintiff is requesting exclusion of, including plaintiff's 1989
conviction upon a guilty plea for continuing criminal enterprise
and the state court charges that were the inception of this

---

[3] This portion of plaintiff's filing is not the subject of
defendant's motion to strike, (ECF No. 108), discussed <u>infra</u>
Part III.c.

civil case.  Defendant then states that while he does not
anticipate utilizing 404(b) evidence of plaintiff's prior
conviction for continuing criminal enterprise, see Fed. R. Evid.
404, he does anticipate bringing up some of the underlying facts
of the sexual assault state court charges, as they form the
basis of this civil action.  He argues that the jury will likely
need to hear evidence as to why defendant was present at
plaintiff's residence on July 22, 2016, which will necessarily
include the investigation of the allegations for which plaintiff
was arrested, tried, and acquitted.  As to plaintiff's past
lawsuits, defendant argues that if plaintiff remains determined
to testify about physical injuries he allegedly sustained by
defendant Lacy and the previously dismissed defendants,
defendant should be permitted to question plaintiff regarding
the same.

Defendant then filed two motions in limine on June 4, 2019,
requesting that the court:  prevent plaintiff from making any
"golden rule" argument; sequester all witnesses; prevent any
discussion of insurance; prevent introduction of any formula for
general damages; prevent argument that plaintiff was forced to
go to trial or that the failure to settle was the fault of
defendant; prevent argument that defendant has delayed this case
proceeding to trial; prevent plaintiff from raising issues
outside the evidence in rebuttal closing argument; and prevent

testimony or evidence regarding dismissed claims or claims against dismissed parties.  (ECF Nos. 104 and 105.)  Plaintiff filed no response to these motions.

## III. **Analysis**

### a. **Plaintiff's Motions for Appointment of Counsel**

There is no constitutional right to counsel in an action brought under 42 U.S.C. § 1983.  See 28 U.S.C. § 1915(e)(1) (2010); see also Hardwick v. Ault, 517 F.2d 295, 298 (5th Cir. 1975).  Although the court has some discretion in assigning counsel, the Fourth Circuit has clearly stated that motions for the appointment of counsel in civil actions should be granted "only in exceptional cases." Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975).  When determining whether a particular case rises to that level, the court must consider the complexity of the claims in dispute and the ability of the indigent party to present them.  Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984); see also Branch v. Cole, 686 F.2d 264, 266 (5th Cir. 1982) ("[N]o comprehensive definition of exceptional circumstances is practical.  The existence of such circumstances will turn on the quality of two basic factors-the type and complexity of the case, and the abilities of the individuals bringing it.") (footnote omitted).

Plaintiff argues that he is not trained in law and cannot afford counsel.  (See ECF Nos. 86 and 97.)  Unfortunately, these

grounds are not exceptional.  Many pro se litigants are unable to find lawyers willing to represent them, and many lack funds to hire counsel on an hourly basis.  Most pro se plaintiffs also lack legal training and education.  These limitations do not, in and of themselves, satisfy the "exceptional" standard to justify the appointment of counsel.  See, e.g., Christian v. Hale, 2019 WL 7559789, at *1 (S.D.W. Va. June 27, 2019), *report and recommendation adopted*, 2019 WL 3801549 (S.D.W. Va. Aug. 13, 2019) (declining to appoint counsel where plaintiff "is indigent, cannot afford to hire counsel, and has limited knowledge of the law"); Louis v. Martinez, 2010 WL 1484302, at *1 (N.D.W. Va. Apr. 12, 2010) (declining to appoint counsel even in circumstances where the plaintiff was incarcerated, housed in the special housing unit, subjected to continuous lock down, and had restricted access to the law library and no opportunity to obtain legal assistance from fellow inmates).

Having reviewed plaintiff's filings, the court finds plaintiff to be capable of retaining counsel or presenting his claims at this stage of the litigation.  While this case appears to be headed to trial, which presents more complex issues for a pro se plaintiff to deal with, plaintiff has simply presented no circumstances that are close to exceptional.  Accordingly, plaintiff's motions for appointment of counsel were **DENIED.**

### b. Parties' Motions for Summary Judgment

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, a reasonable juror could return a verdict for the non-movant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party meets its burden, then the non-movant must set forth specific facts that would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Id. at 322-23.

The court found that genuine issues of material fact remain as to both defendant's and plaintiff's motions for summary judgment, and thus denies both motions.  As to plaintiff's motion, the genuine issues of material fact that remain are whether the officers knocked or yelled prior to entering the residence, and whether plaintiff ever gave or withdrew consent

for the officers to enter and search his residence.  While
plaintiff claims that the officers never knocked, that he never
gave consent for their entry, and that even if he consented at
some point he withdrew that consent when he asked them to leave,
defendant claims that the officers stopped at the open front
door and announced their presence by yelling for plaintiff, and
that plaintiff never requested or demanded that the officers
leave the residence.  A reasonable juror could find defendant's
account more credible than plaintiff's, which would then entitle
a verdict in defendant's favor because no Fourth Amendment
violation would have occurred if plaintiff consented to the
officer's entry and search.  See Schneckloth v. Bustamonte, 412
U.S. 218, 219 (1973) ("[A] premises search conducted pursuant to
valid consent cannot violate the Fourth Amendment.").
Therefore, plaintiff's motion for summary judgment was **DENIED.**

Regarding defendant's motion for summary judgment, as an
initial matter, defendant is correct that he is entitled to
qualified immunity for his initial entry into the residence,
regardless of whether plaintiff consented to that entry.  "The
doctrine of qualified immunity protects government officials
'from liability for civil damages insofar as their conduct does
not violate clearly established statutory or constitutional
rights of which a reasonable person would have known.'"  Pearson
v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v.

13

Fitzgerald, 457 U.S. 800, 818 (1982)).  "For a right to be
clearly established, 'existing precedent must have placed the
statutory or constitutional question beyond debate.'"  White v.
Pauly, 137 S. Ct. 548, 551, (2017) (quoting Mullenix v. Luna,
136 S. Ct. 305, 308 (2015)).  Qualified immunity thus protects
law enforcement officers from "bad guesses in gray areas," and
it ensures that they may be held personally liable only "for
transgressing bright lines."  Maciarello v. Sumner, 973 F.2d
295, 298 (4th Cir. 1992).  Qualified immunity analysis involves
two inquiries:  (1) whether the plaintiff has established the
violation of a constitutional right; and (2) whether that right
was clearly established at the time of the alleged violation.
Pearson, 555 U.S. at 232.

Defendant is entitled to qualified immunity for his entry
into the residence because he followed Sommers into the
residence, not knowing that Sommers may not actually have had
consent to enter.  Even if plaintiff did not give consent for
Sommers to enter, Lacy's subsequent entry would not violate the
Fourth Amendment because it was reasonable.  See Brigham City,
Utah v. Stuart, 547 U.S. 398, 403 (2006) (the ultimate
touchstone of the Fourth Amendment is "reasonableness").  While
it is a basic principle of Fourth Amendment law that searches
inside a home without a warrant are presumptively unreasonable,
see, e.g., Groh v. Ramirez, 540 U.S. 551, 559 (2004),

warrantless entry and searches conducted with consent do not violate the Fourth Amendment.  See Schneckloth, 412 U.S. at 219. It was reasonable for Lacy to assume that Sommers did have consent to enter the residence – regardless of whether that assumption was true – because Lacy was not in a position to hear a response from plaintiff and because "[n]o settled Fourth Amendment principle requires [an] officer to second-guess the earlier steps already taken by his or her fellow officers." White, 137 S. Ct. at 552; see also Sargent v. City of Toledo Police Dept., 150 F. App'x 470, 474 (6th Cir. 2005) ("no Fourth Amendment violation occurs when an officer follows a partner inside after the partner has already entered the home"). Therefore, not only was defendant's entry reasonable, and thus did not violate the Fourth Amendment, but even in the alternative that his entry did violate the Fourth Amendment, it is not clearly established that defendant's action violated plaintiff's constitutional rights.  Therefore, defendant is entitled to qualified immunity for his entry into the residence.

Defendant's motion for summary judgment must be denied, however, because of the genuine issue of material fact of whether plaintiff ever requested or demanded that the officers leave the residence.  While his entry may be protected by qualified immunity, both his remaining in the residence and continuing to search the residence are not.  Although a search

conducted pursuant to valid consent cannot violate the Fourth
Amendment, the consenting party may limit the scope of that
search, and may at any moment retract his consent.  See Florida
v. Jimeno, 500 U.S. 248, 251–52 (1991) ("A suspect may of course
delimit as he chooses the scope of the search to which he
consents.").  This rule of law is clearly established by the
Supreme Court's statement in the Jimeno case.  See id.; see
also, e.g., United States v. Ortiz, 669 F.3d 439, 445 (4th Cir.
2012) ("[A]ny consent given is valid until it is withdrawn by
the defendant."); Manzanares v. Higdon, 575 F.3d 1135, 1147
(10th Cir. 2009) ("[A]n objectively reasonable officer would
have known that Higdon's continued presence in the Manzanares
home became a seizure when Manzanares withdrew his consent");
Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d
404, 426 (5th Cir. 2008) ("[I]t is clearly established that '[a]
consent which waives Fourth Amendment rights may be limited,
qualified, or withdrawn.'" (citations omitted)).

Here, there is a genuine issue of material fact regarding
whether plaintiff ever requested or demanded that the officers
leave the residence, and if so, whether defendant remained in
the residence following plaintiff's withdrawal of consent.
Defendant claims that plaintiff never requested or demanded that
the officers leave the residence.  (ECF No. 93, Ex. 2 at ¶ 8.)
However, plaintiff asserts that he did.  (ECF No. 98 at ¶ 2.)

Plaintiff also repeats that assertion several times in his deposition. (ECF No. 93, Ex. 1 at pp. 59-60, 69, 72.) Plaintiff further contends that after requesting the officers leave, defendant remained in the residence. (Id., Ex. 1 at pp. 70, 75-77.) The signed, sworn, and notarized affidavits of Brandon and Kevin Harris also state that Lacy walked down the driveway minutes after plaintiff and the other officers had left the residence.[4] (ECF Nos. 109 and 109-1.) A reasonable juror could find plaintiff's and the Harris's accounts more credible than defendant's, which would then entitle a verdict in plaintiff's favor because a clearly established Fourth Amendment violation occurred if defendant remained in the residence and continued to search following plaintiff's withdrawal of consent. Therefore, defendant's motion for summary judgment was **DENIED.**

### c. Defendant's Motions to Strike

"The issue of admissibility of the affidavit is an evidentiary question, procedural by nature, that is governed by federal, rather than state law." Guarantee Tr. Life Ins. Co. v. Wood, 631 F. Supp. 15, 22 n.1 (N.D. Ga. 1984) (citing Erie Railroad Co. v. Thompkins, 304 U.S. 64 (1938) and Northwestern Insurance Co. v. Corley, 503 F.2d 224 (7th Cir. 1974)). Under federal law, "[a]n affidavit or declaration used to support or

---

[4] These are different affidavits than the affidavits by Brandon and Kevin Harris that defendant moved to strike.

oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Following the 2010 Amendment to Rule 56, a formal affidavit is no longer required. See Fed. R. Civ. P. 56 advisory committee's note.

The affidavits of Kevin and Brandon Harris, (ECF Nos. 96 and 96-1), are improperly notarized because they do not include a valid notary seal. Thus, the court considered their admissibility as unsworn declarations. See Montgomery v. Ruxton Health Care, IX, LLC, 2006 WL 3746145, at *2 (E.D. Va. Dec. 15, 2006) ("Section 1746 . . . allows federal courts to consider 'affidavits' that have not been notarized so long as they meet other statutory requirements."). 28 U.S.C. § 1746 allows a written unsworn declaration to substitute for an affidavit, so long as the unsworn declaration is subscribed in proper form as true under penalty of perjury. Fed. R. Civ. P. 56 advisory committee's note (citing 28 U.S.C. § 1746). The declarations at issue here are deficient because they contain no statement that they were true declarations made under penalty of perjury. See, e.g., Thompson v. Clarke, 2020 WL 1124361, at *7 (W.D. Va. Mar. 6, 2020) (holding that because the affidavit was neither notarized nor did it include any language that it was declared under penalty of perjury, "it fails to satisfy even the basic

18

requirements for unsworn declarations under penalty of perjury per 28 U.S.C. § 1746"); Trapaga v. Cent. States Joint Bd. Local 10, 2007 WL 1017855, at *5 (N.D. Ill. Mar. 30, 2007) ("[A] court may not consider an unsworn declaration unless it subjects the declarant to penalties of perjury"); United States v. Terrell Cty., Georgia, 2006 WL 8445865, at *1 (M.D. Ga. July 12, 2006) ("As the Affidavit was improperly notarized and does not alternatively state that Defendant Bowens made his declaration under penalty of perjury, as is permitted by 28 U.S.C. § 1746, the same must be discarded.") Therefore, the affidavits of Kevin and Brandon Harris, (ECF Nos. 96 and 96-1), are inadmissible under 28 U.S.C. § 1746, and defendant's motion to strike these affidavits was **GRANTED**.[5]

Defendant's second motion to strike the sur-reply portion of plaintiff's response to defendant's reply was also **GRANTED**. Local Rule of Civil Procedure 7.1(a)(7) states that "[s]urreply memoranda shall not be filed except by leave of court." This court never granted plaintiff leave to file a sur-reply. Therefore, the first portion of plaintiff's "Response in Opposition to Defendant's Reply in Support for Summary Judgment", (ECF No. 106), is an improper sur-reply that was filed without leave of this court and thus should be stricken.

---

[5] The court makes no ruling on the validity of the new affidavits of Kevin and Brandon Harris. (ECF Nos. 109 and 109-1.)

### d. Parties' Motions in Limine

A district court has the inherent authority to manage the course of a trial. Luce v. United States, 469 U.S. 38, 41 n.4 (1984). The court may exercise this power by issuing an evidentiary ruling in advance of trial. Id. Moreover, the court can change its ruling at trial, "even if nothing unexpected happens." Id. at 41. Rulings in limine are speculative in effect; essentially, they are advisory opinions.

As to plaintiff's request that the court exclude any evidence of any past lawsuits filed by plaintiff, the court **GRANTED** this motion. Plaintiff's past lawsuits are irrelevant to the issues and potential damages remaining in this case. See Fed. R. Evid. 401. Whether defendant violated plaintiff's Fourth Amendment rights by remaining in plaintiff's residence is unaffected by any previous lawsuits filed by plaintiff or any prior injuries plaintiff has suffered, as alleged in those prior suits. Cf. Rodrigue v. Wood Grp. PSN, Inc., 2016 WL 5390392, at *4 (E.D. La. Sept. 27, 2016) (ruling that evidence of plaintiff's prior litigation is not relevant to the instant action nor necessary to help determine proper damages for any injuries caused by defendant's actions). Because the evidence of plaintiff's past lawsuits is not relevant, it is not admissible. See Fed. R. Evid. 401. Plaintiff will thus

likewise be barred from introducing any evidence of past
lawsuits.

The court **DENIED** plaintiff's motion requesting the court
prevent defendant from presenting any evidence of plaintiff's
past criminal history.  Evidence of past crimes "is not
admissible to prove a person's character in order to show that
on a particular occasion the person acted in accordance with the
character."  Fed. R. Evid. 404(b)(1).  However, it is admissible
if it is introduced for another purpose, id. 404(b)(2), and if
its probative value is not substantially outweighed by unfair
prejudice.  Id. 403.  Thus, evidence of plaintiff's sexual
assault state court charges is not barred by Rule 404 because it
is introduced for the probative purpose of explaining to the
jury the basis for this civil case.

As to Rule 403's balancing test, there is clear probative
value for the introduction of plaintiff's state court charges
because without any mention of it, the jury would be confused
why defendant and other officers were present at plaintiff's
residence on July 22, 2016.  However, there is a strong danger
of unfair prejudice to plaintiff from introducing the full
sexual abuse nature of plaintiff's state court charges, which
persists even though plaintiff was acquitted of the charges.
See, e.g., United States v. Roux, 715 F.3d 1019, 1026 (7th Cir.
2013) ("testimony that the defendant has sexually abused

children is highly prejudicial"); <u>United States v. Davis</u>, 624
F.3d 508, 512 (2d Cir. 2010) ("There can be no doubt that
admission of a prior conviction for child molestation carries a
high risk of prejudice.").  There is very little additional
probative value acquired from introducing the sexual nature of
plaintiff's charges, as the vast majority of the probative value
of explaining why the officers were present at plaintiff's
residence can be gained by introducing only the limited fact
that the officers were present due to a criminal complaint
against plaintiff.  With such a limitation, the probative value
is no longer substantially outweighed by the danger of unfair
prejudice.  Therefore, the court **DENIED** plaintiff's request to
bar all evidence of plaintiff's state court sexual abuse
charges, but does impose a restriction that defendant shall not
introduce evidence of the sexual nature of the reason officers
were present at plaintiff's residence.

Defendant's requests can be resolved easily.  No party
shall engage in "golden rule" argument, as it is "universally
recognized as improper because it encourages the jury to depart
from neutrality and to decide the case on the basis of personal
interest and bias rather than on the evidence."  <u>United States
v. Susi</u>, 378 F. App'x 277, 283 (4th Cir. 2010).  Second, all
witnesses at trial shall be excluded so that they cannot hear
other witnesses' testimony, as is mandatory upon the request of

a party.  Fed. R. Evid. 615.  Third, evidence of liability

insurance is inadmissible in this case, as there is no

controversy about proof of agency, ownership or control.  Id.

411.  Fourth, no formula for general damages shall be

introduced, as the law is well settled that general damages are

"intangibles" for which there is no exact measurement, Jimenez

v. Chrysler Corp., 74 F. Supp. 2d 548 (4th Cir. 1999), and that

actual injury must be proved in all constitutional violation

suits.[6]  Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 306,

(1986) ("the abstract value of a constitutional right may not

form the basis for § 1983 damages").  Fifth, plaintiff may not

argue he was forced to go to trial or that any failure to settle

was the fault of defendant or that defendant has delayed this

case from proceeding to trial, as these lines of argument are

not relevant and are prejudicial.  Fed R. Evid. 401, 403.

---

[6] "The concept of actual injury at common law is a broad one, and
the Supreme Court has recognized that 'compensatory damages may
include not only out-of-pocket loss and other monetary harms,
but also such injuries as impairment of reputation . . .
personal humiliation, and mental anguish and suffering.'  We
have recognized, in the § 1983 context, that a 'plaintiff's
testimony, standing alone, can support an award of compensatory
damages for emotional distress based on a constitutional
violation.'  Such evidence must, however, 'establish that the
plaintiff suffered demonstrable emotional distress, which must
be sufficiently articulated; neither conclusory statements that
the plaintiff suffered emotional distress nor the mere fact that
a constitutional violation occurred supports an award of
compensatory damages.'"  Randall v. Prince George's Cty., Md.,
302 F.3d 188, 208 (4th Cir. 2002) (citations omitted).

Sixth, plaintiff may not raise issues outside the evidence in his rebuttal closing argument.  See, e.g., United States v. Wilson, 135 F.3d 291, 298 (4th Cir. 1998) ("By going outside the evidence, the prosecutor 'violated a fundamental rule, known to every lawyer, that argument is limited to the facts in evidence.'" (quoting United States ex rel. Shaw v. De Robertis, 755 F.2d 1279, 1281 (7th Cir. 1985))).  And lastly, neither party may present testimony or evidence regarding dismissed claims or claims against dismissed parties, as introduction of such evidence is not relevant and is likely to confuse the jury. Fed R. Evid. 401, 403.  Therefore, for the above reasons, all of defendant's motions in limine were **GRANTED**.

## IV.  Conclusion

For the foregoing reasons, plaintiff's Motions for Appointment of Counsel, (ECF Nos. 86 and 97), were **DENIED**; plaintiff's Motion for Summary Judgment, (ECF No. 98), was **DENIED**; defendant's Motion for Summary Judgment, (ECF No. 93), was **DENIED**; defendant's Motions to Strike, (ECF Nos. 99 and 108), were **GRANTED**; plaintiff's Motion in Limine, (ECF No. 84), was **GRANTED in part and DENIED in part**; and defendant's Motions in Limine, (ECF Nos. 104 and 105), were **GRANTED**.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED** this 6th day of April, 2020.

ENTER:

David A. Faber
Senior United States District Judge