IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

LARRY ARNOLD YOUNG,

    Plaintiff,

v.                         CIVIL ACTION NO. 1:17-03633

T.A. LACY,

    Defendant.


LARRY ARNOLD YOUNG,

    Plaintiff,

v.                         CIVIL ACTION NO. 1:19-00186

T.A. LACY, and
STEVEN A. SOMMERS,

    Defendants.

### MEMORANDUM OPINION AND ORDER

    By Standing Order, Case No. 1:19-cv-00186 was referred to
United States Magistrate Judge Cheryl A. Eifert for submission of
findings and recommendation regarding disposition pursuant to 28
U.S.C. § 636(b)(1)(B).[1] Magistrate Judge Eifert submitted to the
court her Findings and Recommendation ("PF&R") on December 4,
2019, in which she recommended that the court grant defendants'
motion and amended motion to dismiss, (ECF Nos. 120, 121),
dismiss with prejudice the Complaint in action No. 1:19-cv-00186,
(ECF No. 115), close Case No. 1:19-cv-00186 and remove it from

_____

[1] This action, Case No. 1:19-cv-00186, was consolidated with Case
No. 1:17-cv-03633, with Case No. 1:17-cv-03633 designated as the
lead case.

the court's active docket, and permit plaintiff to proceed with the remaining claim pending in Case No. 1:17-cv-03633.  (<u>See</u> ECF No. 128.)

In accordance with the provisions of 28 U.S.C. § 636(b), plaintiff was allotted fourteen days and three mailing days in which to file any objections to Magistrate Judge Eifert's PF&R. The failure of any party to file such objections within the time allowed constitutes a waiver of such party's right to a *de novo* review by this court.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989).  Plaintiff was granted an extension of time to file objections, (<u>see</u> ECF Nos. 131, 134), and timely filed his objections on January 8, 2020.  (ECF No. 135.)

## I.   Factual and Procedural Background

On July 20, 2016, state authorities received a report that plaintiff sexually assaulted a six-year-old female child.  (ECF Nos. 53-1, 53-2.)  Plaintiff was arrested at a residence on July 22, 2016 and appeared for a preliminary hearing before a county magistrate, who found probable cause that plaintiff committed sexual assault in the first degree and sexual abuse in the first degree.  (ECF Nos. 53-1, 53-2.)  A Mercer County, West Virginia grand jury subsequently charged plaintiff with one count of sexual assault in the first degree and two counts of sexual abuse in the first degree.  (ECF No. 53-4.)  Plaintiff was ultimately

tried before a jury and acquitted of all charges on March 15,
2018.  (ECF No. 55.)

## A. First civil action: Case No. 1:17-cv-03633

While plaintiff's criminal case was pending in state court,
plaintiff filed Case No. 1:17-cv-03633 in this court, naming as
defendants T.A. Lacy ("Lacy"), Aaron Young ("Young"), and Perry
Richmond ("Richmond").  (ECF No. 1.)  In an amended complaint,
plaintiff asserted that Steven Sommers ("Sommers"), Lacy, and
Jeremy Farmer ("Farmer") "illegally entered and searched . . .
the trailer" where plaintiff was found on July 22, 2016, and
arrested him without a warrant.  (ECF No. 33 at 2.)  Plaintiff
claimed that Lacy "illegally search[ed] [the trailer] after he
was asked to leave the premises."  (Id. at 3.)  Plaintiff also
alleged that, in the course of the arrest, Lacy snuck behind him,
grabbed his left hand, twisted his arm behind his back, and
something "cracked" in plaintiff's wrist.  (Id. at 2.)  Plaintiff
claimed that he has "suffered constant pain in [his] left wrist
ever since that moment" and could not use his left hand "without
insulting the injury and suffering severely."  (Id. at 3.)
Plaintiff further asserted that Richmond and Young applied
excessive force in removing him from the courtroom after two of
his criminal hearings.  (ECF Nos. 1 at 29-31, 13 at 3-22, 33, and
33-1 at 1-36.)

3

Defendants filed a motion for summary judgment and amended motion for summary judgment accompanied by memoranda in support, to which plaintiff filed a response.  (ECF Nos. 48, 49, 53, 54, and 55.)  On May 11, 2018, Magistrate Judge Cheryl Eifert issued Proposed Findings and Recommendations ("PF&R"), concluding that plaintiff had raised genuine issues of fact with respect to his Fourth Amendment claims of an illegal search and false arrest, but failed to state valid claims of excessive force.  (ECF No. 57.)  Magistrate Judge Eifert recommended that defendants Richmond and Young be dismissed from the case; that the excessive force claim against Lacy be dismissed, and that plaintiff be permitted to proceed on his claims against Lacy for improper search and false arrest.  (Id.)

On September 28, 2018, this court adopted the findings and recommendations in the PF&R, except this court found no factual basis to support the false arrest claim.  (ECF No. 65.)  Consequently, the court dismissed defendants Richmond and Young from the case, dismissed the false arrest and excessive force claims against Lacy, and allowed plaintiff to proceed with his Fourth Amendment illegal search claim against Lacy.  (Id.)

On October 17, 2018, plaintiff filed a Notice of Appeal with the Fourth Circuit.  (ECF No. 70.)  The Fourth Circuit dismissed the appeal on January 30, 2019 due to plaintiff's failure to prosecute.  (ECF No. 78.)  On April 18, 2019, the Fourth Circuit

reopened plaintiff's appeal, noting that plaintiff evidently did not receive critical filings in the matter because the Clerk of the Fourth Circuit was not using the correct mailing address. (ECF No. 91.)  On June 13, 2019, this court stayed plaintiff's remaining claim pending completion of plaintiff's appeal.  (ECF No. 110.)  On August 26, 2019, the Fourth Circuit denied the appeal on the ground that it lacked jurisdiction over the matter, because this court had not issued a final order, nor an appealable interlocutory or collateral order.  (ECF No. 111.)

**B. Second civil action: Case No. 1:19-cv-00186**

On March 15, 2019, plaintiff filed a second civil action, which pertained to the same search, arrest, detention, and prosecution underlying Case No. 1:17-cv-03633.  The second civil action was docketed as Case No. 1:19-cv-00186 and, for the first time, named Sommers as a defendant.  (ECF No. 115.)

Following the issuance of the Fourth Circuit's decision denying plaintiff's appeal, on August 29, 2019, this court entered an Order consolidating Case Nos. 1:17-cv-03633 and 1:19-cv-00186 on the basis that they involved the same underlying events.  (ECF No. 114.)  As previously indicated, although Sommers had been mentioned in plaintiff's amended complaint in Case No. 1:17-cv-03633, (see ECF No. 33), Sommers was not named as a defendant in that action.  Accordingly, the Clerk issued a

summons to Sommers, which was served with the complaint filed in Case No. 1:19-cv-00186.  (ECF Nos. 116, 118.)

On October 22, 2019, Lacy and Sommers filed an Amended Motion to Dismiss.  (ECF No. 121.)  In the motion, Lacy argues that the newly filed complaint in Case No. 1:19-cv-00186 should be dismissed against him, because it is duplicative of the amended complaint pending in Case No. 1:17-cv-03633.  Lacy also notes that the new complaint relies on the same factual allegations and asserts the same claims already raised in this action.  Sommers argues that the complaint should be dismissed against him, because plaintiff's claims against him are either barred by the applicable statute of limitations or fail as a matter of law.  (ECF No. 122.)

Plaintiff filed a response to defendants' motions to dismiss on November 15, 2019.  (ECF Nos. 124, 125.)  In his response, plaintiff clarifies that his claims against Sommers include the following:  illegal entry, illegal search and seizure, false detention, false arrest, filing false claims, refusing plaintiff medical attention, perjury, defamation of character, and malicious prosecution.  Plaintiff asserts that his claims against Sommers are not time barred because the limitations period did not begin to run until plaintiff was exonerated of the criminal charges for which he was arrested.  Plaintiff further asserts that any claims against Sommers "relate back" to the original

complaint.  With respect to his claims against Lacy, plaintiff
submits new evidentiary support for the claims in the form of
witness affidavits, (see ECF No. 124-1), but does not dispute
that the claims are duplicative of those already alleged.

Lacy and Sommers filed a reply on November 22, 2019,
asserting that plaintiff offers little substantive resistance to
their dispositive motions; instead, he attempts to rely on his
pro se status as a reason to excuse him from the Federal Rules of
Civil Procedure.  (ECF No. 127.)  Defendants further argue that
plaintiff's claims must be dismissed as duplicative of his
amended complaint in Case No. 1:17-cv-03633, with the exception
that plaintiff now specifically names Sommers as a defendant.
Defendants argue that the claims against Sommers are time-barred,
are not subject to the favorable termination rule, and do not
relate back to plaintiff's original pleading simply because
plaintiff decided not to name Sommers as a defendant in his
original action.  Finally, defendants contend that plaintiff's
false arrest, malicious prosecution, excessive force, and denial
of medical care claims fail as a matter of law given this court's
prior determinations that probable cause existed for plaintiff's
arrest; that the use of force with plaintiff was objectively
reasonable; that Lacy was entitled to qualified immunity; and
that plaintiff suffered no injury.

I.   **Standard of Review of *Pro Se* Objections**

Pursuant to Fed. R. Civ. P. 72(b), the court must "make a *de novo* determination upon the record . . . of any portion of the magistrate judge's disposition to which specific written objection has been made."  However, the court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  See <u>Thomas v. Arn</u>, 474 U.S. 140, 149-50 (1985). Furthermore, *de novo* review is not required and unnecessary "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations."  <u>Orpiano v. Johnson</u>, 687 F.2d 44, 47-48 (4th Cir. 1982); <u>see also</u> <u>United States v. Midgette</u>, 478 F.3d 616, 622 (4th Cir. 2007) ("[T]o preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection."); <u>McPherson v. Astrue</u>, 605 F. Supp. 2d 744, 749 (S.D.W. Va. 2009) ("[F]ailure to file a specific objection constitutes a waiver of the right to *de novo* review.").

"A document filed *pro se* is 'to be liberally construed.' " <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)).  Specifically as to objections

8

to a PF&R, courts are "under an obligation to read a *pro se* litigant's objections broadly rather than narrowly." Beck v. Comm'r of Internal Revenue Serv., 1997 WL 625499, at *1-2 (W.D.N.C. June 20, 1997) (citing Orpiano, 687 F.2d at 48). However, objections that are "unresponsive to the reasoning contained in the PF&R" are irrelevant and must be overruled. Kesterson v. Toler, 2009 WL 2060090, at *1 (S.D.W. Va. July 7, 2009) (citing Orpiano, 687 F.2d at 47).

## II.  Analysis

Liberally construing plaintiff's response to Magistrate Judge Eifert's PF&R, plaintiff sets forth three primary objections.  First, plaintiff objects to the PF&R's conclusion that his claims are time-barred by the statute of limitations.[2] Second, plaintiff argues that the statute of limitations should be tolled.  And third, he objects to the PF&R's deliberate indifference analysis.

### A. Objection one: claims not barred by statute of limitations

In an action brought pursuant to 42 U.S.C. § 1983, the statute of limitations is determined by the law of the State in which the action is brought, while federal law governs when the limitation period accrues.  Wallace v. Kato, 549 U.S. 384, 387

---

[2] The PF&R does explain that plaintiff's malicious prosecution claim is not time-barred and is timely filed.  However, the PF&R concluded that because the court had already determined that probable cause existed to arrest plaintiff, (see ECF No. 65), plaintiff had not made a viable malicious prosecution claim.

(2007); <u>A Society Without a Name v. Virginia</u>, 655 F.3d 342, 348
(4th Cir. 2011).  "We determine when the statute of limitations
on a plaintiff's § 1983 claim begins to run by looking to the
common-law tort most analogous to the plaintiff's claim.  In
general, the limitations period for common law torts commences
when the plaintiff knows or has reason to know of his injury."
<u>Owens v. Baltimore City State's Attorneys Office</u>, 767 F.3d 379,
392 (4th Cir. 2014).

Plaintiff did not object to the PF&R's conclusions as to the
length of the statute of limitations corresponding to his claims.
The court thus adopts the PF&R's findings as to West Virginia
statute of limitations provisions corresponding to each claim, as
follows:  i) search and seizure claim is subject to a two-year
statute of limitations under West Virginia law; ii) false arrest
and false imprisonment claims are subject to one-year statutes of
limitations; iii) malicious prosecution claim is subject to a
one-year statute of limitations; iv) defamation and perjury
claims are subject to one-year statutes of limitations; and v)
plaintiff's deliberate indifference claim is governed by a two-
year statute of limitations.

Instead, plaintiff objects to the PF&R's conclusions as to
when the limitation period accrues, which is a matter of federal
law.  Plaintiff argues that the statute of limitations does not
bar any of his claims, regardless of when he first had knowledge

10

or was put on notice of his claims, because the statute of limitations did not begin to run until after the criminal prosecution against him had concluded.  Plaintiff points to the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994), as barring his § 1983 claims while his criminal prosecution was pending and thus serving as a basis for equitable tolling of the statute of limitations for his claims.  However, plaintiff's reading of Heck is incorrect.

The Fourth Circuit has interpreted Heck as setting forth the rule that a person may not file suit under § 1983 as long as a § 1983 judgment in his favor would imply the invalidity of his criminal conviction.  See Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 391 (4th Cir. 2014).  While here plaintiff was acquitted and not convicted, the Heck analysis remains the same.  See McDonough v. Smith, 139 S. Ct. 2149, 2158 (2019) ("[W]hile [plaintiff] was acquitted . . . his claims challenge the validity of the criminal proceedings against him in essentially the same manner as the plaintiff in Heck challenged the validity of his conviction.")  Thus, any claim that does not necessarily imply the invalidity of the criminal proceedings against him would not have been Heck-barred.

In applying Heck, courts must carefully analyze the relationship between the plaintiff's § 1983 (or other) claims and the charge founding the criminal proceedings against plaintiff.

If a judgment in favor of the plaintiff would necessarily imply the invalidity of the plaintiff's conviction or sentence, the § 1983 action is precluded.  If, however, the plaintiff's action, even if successful, would not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action can proceed.  See Ballenger v. Owens, 352 F.3d 842, 845-47 (4th Cir. 2003); Gray v. Ballard, 2015 WL 1292787, at *1 (S.D.W. Va. Mar. 23, 2015), aff'd, 848 F.3d 318 (4th Cir. 2017).

   i.   **Illegal search and seizure claims, false arrest and false imprisonment claims**

   Applying this standard, plaintiff's illegal search and seizure claims and his false arrest and false imprisonment claims were not barred by Heck.  The Fourth Circuit has held that "civil claims based on unreasonable searches do not necessarily imply that the resulting criminal convictions were unlawful." Covey v. Assessor of Ohio Cty., 777 F.3d 186, 197 (4th Cir. 2015) (citing Heck, 512 U.S. at 487 n.7).  This is because a "valid conviction can still result after an improper search when doctrines such as independent source, inevitable discovery, or harmless error would alleviate the effect of the improper search." Id.  Further, warrantless arrests also do "not necessarily implicate the validity of a subsequently obtained conviction." Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 182 (4th Cir. 1996); see also Massey v. Wriston, 2016 WL 5172811, at *5 (S.D.W. Va. Sept.

21, 2016) ("Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur."). Here, plaintiff was charged in state court of one count of sexual assault in the first degree and two counts of sexual abuse in the first degree. Unlike criminal charges based upon, for example, resisting an arrest that was later deemed unlawful, these criminal charges are independent from the claims made by plaintiff.

Because plaintiff's illegal search and seizure claims and his false arrest and false imprisonment claims do not necessarily imply the invalidity of the criminal proceedings brought against him, these claims were not barred by <u>Heck</u>. Therefore, plaintiff's objection that the statute of limitations did not run until his acquittal is **OVERRULED** as to his illegal search and seizure claims and his false arrest and false imprisonment claims.

### *ii.  Malicious prosecution claim*

The PF&R concluded that plaintiff's malicious prosecution claim did not accrue until the criminal proceedings against him concluded. However, the PF&R also concluded that because the court had already determined that Sommers had probable cause to arrest plaintiff, plaintiff did not assert a viable malicious prosecution claim against Sommers. Plaintiff did not respond to

13

this finding by the PF&R in his objections, and thus the court **ADOPTS** this finding by the PF&R without *de novo* review.

### iii. Defamation and perjury claims

Plaintiff claims that Sommers defamed him and committed perjury by fabricating evidence in his statements to the magistrate and in grand jury testimony.  The PF&R noted that plaintiff appeared before the magistrate in July 2016 and the grand jury indicted him in October 2016.  (ECF Nos. 53-2, 53-4.)  The PF&R also concluded that these claims are subject to one-year statutes of limitations.  Thus, the PF&R found that because plaintiff did not file the instant claims against Sommers until March 2019, his defamation and perjury claims are untimely.  The PF&R also concluded that plaintiff's defamation and perjury claims as to Sommers' grand jury testimony fail as a matter of law because of witness immunity from § 1983 claims.

Plaintiff objects to the PF&R's findings on this issue, contending that his claims for perjury and fabrication of evidence are like his claim for malicious prosecution because they are both based on the wrongfulness of the prosecution itself.  Thus, plaintiff argues that he was barred from bringing these claims while his prosecution was ongoing.[3]  Plaintiff

---

[3] Because the court rules in plaintiff's favor on this line of argument, the court need not address plaintiff's two other grounds – the favorable termination rule, and that the violations grounded on fabricated evidence were ongoing and continuous – for delaying the start of the statute of limitations period until

therefore argues that the statute of limitations on these claims did not begin to run until his acquittal on March 15, 2018, making his March 14, 2019 lawsuit against Sommers timely filed.

The court agrees with plaintiff:  his claims against Sommers for defamation and perjury based upon fabrication of evidence were timely filed.  In 2019, the Supreme Court held that a plaintiff who was acquitted of the criminal charges brought against him "could not bring his fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution." McDonough v. Smith, 139 S. Ct. 2149, 2156 (2019).  The Court analogized fabrication of evidence claims to malicious prosecution claims, explaining that "[t]he essentials of [plaintiff's] claim are similar [to a claim for malicious prosecution]:  His claim requires him to show that the criminal proceedings against him — and consequent deprivations of his liberty — were caused by [defendant's] malfeasance in fabricating evidence.  At bottom, both claims challenge the integrity of criminal prosecutions undertaken 'pursuant to legal process.'" Id. (quoting Heck, 512 U.S. at 484).  Further, the Court reasoned that

> impos[ing] a ticking limitations clock on criminal
> defendants as soon as they become aware that fabricated
> evidence has been used against them.  Such a rule would

---

after his acquittal.  These arguments also do not have any effect on the court's later discussion as to witness immunity in § 1983 claims based upon the witness's testimony.

> create practical problems in jurisdictions where
> prosecutions regularly last nearly as long as—or even
> longer than—the relevant civil limitations period.  A
> significant number of criminal defendants could face an
> untenable choice between (1) letting their claims
> expire and (2) filing a civil suit against the very
> person who is in the midst of prosecuting them.  The
> first option is obviously undesirable, but from a
> criminal defendant's perspective the latter course,
> too, is fraught with peril:  He risks tipping his hand
> as to his defense strategy, undermining his privilege
> against self-incrimination, and taking on discovery
> obligations not required in the criminal context."

Id. at 2158 (internal citations omitted).  Therefore, the Court

held that for claims of fabrication of evidence, "[o]nly once the

criminal proceeding has ended in the defendant's favor . . . will

the statute of limitations begin to run."  Id.

Nonetheless, while plaintiff succeeds in his objections to

when the statute of limitations begins to run, his claims still

fail as a matter of law.  "[T]he law is well-settled that grand

jury witnesses enjoy the same immunity as witnesses at trial,

which is an absolute immunity from any § 1983 claim based on the

witness's testimony."  Dreyfuse v. Chiles, 2018 WL 4381276, at *2

(S.D.W. Va. Mar. 23, 2018) (citing Rehberg v. Paulk, 566 U.S.

356, 369 (2012)), report and recommendation adopted, 2018 WL

3493083 (S.D.W. Va. July 20, 2018); see also Ragland v. Doe, 811

F. App'x 177 (4th Cir. 2020).  In addition, a police officer who

testifies before a grand jury or at trial is afforded the same

immunity as any lay witness.  Rehberg, 566 U.S. at 367-69 (citing

Briscoe v. LaHue, 460 U.S. 325, 342-43 (1983)).  Furthermore,

16

plaintiff made no objections to the PF&R's findings on this issue of law.  *See* McPherson v. Astrue, 605 F. Supp. 2d 744, 749 (S.D.W. Va. 2009) ("[F]ailure to file a specific objection constitutes a waiver of the right to *de novo* review.").

Therefore, plaintiff's objection that the statute of limitations does not bar his defamation and perjury claims against Sommers is **SUSTAINED**.  However, because his claims fail as a matter of law for reasons other than the statute of limitations, his objection to the PF&R's conclusion that this claim must be dismissed is **OVERRULED**.

### A. Objection two: tolling the statute of limitations

Plaintiff alternatively argues that even if his claims were not Heck-barred, the statute of limitations should be tolled until after his acquittal under the reasoning of Hardin v. Straub, 490 U.S. 536 (1989), and Bd. of Regents of Univ. of State of N.Y. v. Tomanio, 446 U.S. 478 (1980).  Plaintiff contends that these cases hold that it is appropriate for a federal court to adopt a federal rule to toll the statute of limitations during the pendency of a state court prosecution.

Plaintiff's reading of Hardin and Tomanio is incorrect.  In both cases, the Supreme Court made it clear that federal courts must use the tolling rules of the state in which it was situated unless the state's rule is inconsistent with federal law.  *See* Hardin, 490 U.S. at 539; Tomanio, 446 U.S. at 485-86.  In Hardin,

17

this meant applying Michigan's tolling rule, <u>Hardin</u>, 490 U.S. at 538-39, and in <u>Tomanio</u> this meant applying the New York tolling rule.  <u>See Tomanio</u>, 446 U.S. at 485, 491-92.  Therefore, here the court must examine West Virginia's tolling rule, determine whether or not plaintiff may utilize the rule, and determine whether the rule is "inconsistent" with federal law.

West Virginia law follows the discovery rule, which tolls the statute of limitations until a claimant knows or by reasonable diligence should know his claim.  <u>See Gaither v. City Hospital, Inc.</u>, 487 S.E.2d 901 (1997); <u>see also Dunn v. Rockwell</u>, 689 S.E.2d 255, 265 (2009).  The discovery rule generally applies to all torts, unless a specific statute states otherwise.  <u>Evans v. United Bank, Inc.</u>, 775 S.E.2d 500, 507 (W. Va. 2015).  Here there is no specific statute that states specific tolling rules for § 1983 claims.  The discovery rule does not benefit plaintiff, as he was aware of his claims in 2016 but did not file suit against Sommers until 2019, after the statute of limitations had run.  This rule is also not inconsistent with federal law, as it is the same default rule as used in the federal system.  <u>See Owens v. Baltimore City State's Attorneys Office</u>, 767 F.3d 379, 392 (4th Cir. 2014) ("[T]he limitations period for common law torts commences when the plaintiff knows or has reason to know of his injury.").  The fact that this rule precludes tolling in the circumstances of this case does not make it "inconsistent" with

the provisions of § 1983.  <u>Tomanio</u>, 446 U.S. at 491.[4]  Nor does

the lack of a tolling statute specific to § 1983 claims

demonstrate inconsistency:  "a State reasonably could decide that

there is no need to enact a tolling statute applicable to [§

1983] suits."  <u>Hardin</u>, 490 U.S. at 544.

West Virginia's tolling rule is not inconsistent with

federal law, and its state law tolling rule must be applied by

this court.  Applying the discovery rule shows that there is no

basis under West Virginia law to toll the statute of limitations

in this case.  Therefore, plaintiff's objection that tolling is

appropriate in this case is **OVERRULED**.

### B. Objection three: deliberate indifference

Plaintiff's third objection is to the PF&R's conclusions

that his deliberate indifference claim is untimely and fails to

state a claim.  Plaintiff argues that he states a valid claim for

deliberate indifference if he shows that defendant's actions

exposed him to a substantial risk of serious harm.  Plaintiff

---

[4]

 Moreover, "a state statute cannot be considered 'inconsistent'
with federal law merely because the statute causes the plaintiff
to lose the litigation."  <u>Robertson v. Wegmann</u>, 436 U.S. 584
(1978).  The two principal policies embodied in § 1983 are
deterrence and compensation.  <u>See id.</u>  Neither of these policies
is inconsistent with West Virginia's discovery rule since
plaintiffs can still readily enforce their claims - thereby
recovering compensation and fostering deterrence - simply by
commencing their actions within the appropriate statute of
limitations period for their claims.  <u>Cf.</u> <u>Tomanio</u>, 446 U.S. at
488.

then alleges that defendant Sommers, by placing him in Southern Regional Jail ("SRJ") with an injured wrist, exposed and ignored an excessive risk to plaintiff's health and safety, because inmates at SRJ are allegedly beating each other to death.

Plaintiff's objection fails on multiple grounds.  First, plaintiff made no direct objection to the PF&R's conclusion that his deliberate indifference claim is untimely.  Second, and more starkly, the fact that defendant Sommers placed him at SRJ does not state a valid deliberate indifference claim.

To state a cognizable Eighth Amendment claim, an inmate must satisfy two prongs: one objective and one subjective.  First, the inmate must demonstrate the existence of a need that is objectively serious.  Estelle v. Gamble, 429 U.S. 97, 103, 104 (1976).  "Compelling a showing of significant physical or emotional harm, or a grave risk of such harm, infuses an element of objectivity into the analysis, lest resolution of the seriousness of the deprivation devolve into an application of the subjective views of the judges deciding the question."  Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (citing Strickler v. Waters, 989 F.2d 1375, 1379–80 (4th Cir. 1993)).  Second, the inmate must show that the official subjectively knew of, but disregarded, "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Neither prong is present in plaintiff's deliberate indifference claim.  There was not a risk of significant harm in placing plaintiff in jail.  Plaintiff gives no reason why he is particularly predisposed to be harmed while incarcerated.  Moreover, it would be ridiculous to hold that placing a person in jail (apart from demonstrated, individualized safety concerns) constituted a risk of significant harm sufficient to satisfy deliberate indifference.  The subjective prong is likewise not present.  Plaintiff argues that Sommers should have known that inmates at SRJ were beating other inmates to death, but gives no evidence why Sommers would be aware of that fact.  And though the court can find the example plaintiff purportedly referred to - that in 2019 an inmate at SRJ was beaten to death by other inmates[5] - it is physically impossible that Sommers would have been aware of this incident back in 2016 when he placed plaintiff in SRJ.[6]

Therefore, because plaintiff cannot satisfy either prong of the deliberate indifference analysis, the court **OVERRULES** his objection.

_____

[5]
 See Pete Davis, *Five indicted in beating death of Southern Regional Jail inmate*, METRONEWS (Oct. 2, 2019), https://wvmetronews.com/2019/10/02/five-indicted-for-beating-death-of-man-at-southern-regional-jail/.
[6]
 The court also notes that it was unable to find any 2016 incident where inmates at SRJ beat another inmate to death.

All other arguments made by plaintiff are either duplicative or are unresponsive to the PF&R and irrelevant, and therefore must be **OVERRULED**.  See <u>Kesterson v. Toler</u>, 2009 WL 2060090, at *1 (S.D.W. Va. July 7, 2009) (citing <u>Orpiano</u>, 687 F.2d at 47).

I.   **Conclusion**

Accordingly, the court adopts the Findings and Recommendation of Magistrate Judge Eifert as follows:

1.   Defendants' Motion and Amended Motion to Dismiss, (ECF Nos. 120, 121), are **GRANTED**;

2.   Plaintiff's Complaint in action No. 1:19-cv-00186, (ECF No. 115), is **DISMISSED WITH PREJUDICE**;

3.   The Clerk is directed to close Case No. 1:19-cv-00186 and remove it from the court's active docket, and permit plaintiff to proceed with the remaining claim pending in Case No. 1:17-cv-03633.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and unrepresented parties.

**IT IS SO ORDERED** this 24th day of July, 2020.

ENTER:

David A. Faber
Senior United States District Judge